# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
February 8, 2017 Session

## TENNESSEE DEPARTMENT OF CORRECTION v. DAVID PRESSLEY

**Appeal by Permission from the Court of Appeals
Chancery Court for Davidson County
No. 141380I      Claudia C. Bonnyman, Chancellor**

_____

**No. M2015-00902-SC-R11-CV – Filed September 14, 2017**

_____

We granted this appeal to determine whether a "preferred service" state employee has a protected property interest in his or her employment and whether due process or specific statutory language requires the State to bear the ultimate burden of proof in a post-termination administrative appeal under section 8-30-318 of the Tennessee Excellence, Accountability, and Management Act of 2012, Tenn. Code Ann. §§ 8-30-101 through -407.  The Respondent, David Pressley, was employed by the Petitioner, Tennessee Department of Correction, as a correctional officer at the Morgan County Correctional Complex.  Mr. Pressley was dismissed from his employment and challenged his termination pursuant to the TEAM Act's appeals process.  Mr. Pressley's termination was upheld by the Commissioner of TDOC at Step I of the TEAM Act's appeals process and at Step II by the Commissioner of Human Resources.  At Step III of the appeals process, the Board of Appeals reinstated Mr. Pressley and reduced his discipline to a 14-day suspension.  The Board of Appeals also determined that the State bore the ultimate burden of proof in the Step III appeal.  The State appealed to chancery court, challenging the assignment of the burden of proof.  The chancery court reversed the Board of Appeals' decision on the burden of proof issue and remanded the matter to the Board of Appeals.  Mr. Pressley appealed to the Court of Appeals which, in turn, reversed the chancery court's decision and determined that "preferred service" state employees have a protected property interest in their employment and that the State bore the ultimate burden of proof in the Step III appeal.  We reverse the Court of Appeals' judgment and remand this matter to the Board of Appeals for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals
Reversed; Remanded to the Board of Appeals**

JEFFREY S. BIVINS, C.J., delivered the opinion of the court, in which CORNELIA A. CLARK, SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Ann M. Mikkelsen, Assistant Attorney General; and Joseph F. Whalen, Associate Solicitor General, for the appellant, Tennessee Department of Correction.

Frank J. Scanlon and Samuel P. Helmbrecht, Nashville, Tennessee, for the appellee, David Pressley.

## OPINION

### Factual and Procedural Background

The Respondent, David Pressley ("Mr. Pressley"), was employed by the Petitioner, Tennessee Department of Correction ("TDOC" or "the State"), beginning in November of 2011 as a correctional officer at the Morgan County Correctional Complex ("MCCX" or "the prison"). On January 8, 2014, Mr. Pressley received a letter from the prison warden (the "Warden") notifying him that he had been dismissed from his employment. The letter alleged that on the night of January 6, 2014, and the morning of January 7, 2014, video surveillance cameras showed that Mr. Pressley allowed inmates to pilfer large amounts of food from the prison kitchen, prepare some of the food, and leave the kitchen area with large quantities of food while he was supervising the cleaning of the prison kitchen. The letter also alleged that Mr. Pressley wrongfully accessed a secure food storage area secured by a tamper seal. The letter charged that this alleged conduct violated "MCCX Service/Dining Room-Security Post Orders" ("Post Orders") and Department of Human Resources Rules pertaining to "incompetency" and "negligence" in the performance of duties and conduct unbecoming an employee in state service. The letter stated that Mr. Pressley's employment would be terminated effective January 17, 2014, and that, as a preferred service employee, Mr. Pressley had the right to file a written complaint challenging his dismissal.

Pursuant to the Tennessee Excellence, Accountability, and Management Act of 2012 (the "TEAM Act" or the "Act"), discussed in detail below, Mr. Pressley initiated a Step I review challenging his dismissal by filing a complaint with the Commissioner of TDOC. The complaint specifically alleged that "[t]he department did not have cause to take such action." By letter dated February 3, 2014, the Commissioner of TDOC, Derrick D. Schofield, upheld Mr. Pressley's termination. On or about February 12, 2014, Mr. Pressley filed a request for a Step II review. On March 10, 2014, the Commissioner

of Human Resources (the "Commissioner"), Rebecca R. Hunter, upheld Mr. Pressley's dismissal at his Step II review, finding no "violation by the Department [of Correction] due to [Mr. Pressley's] failure to demonstrate how the Department [of Correction] violated [Tennessee Code Annotated Section 8-30-316]."

Following his failure to obtain relief at his Step II review, Mr. Pressley initiated a Step III review by filing an appeal with the Board of Appeals ("the Board"). In the appeal, he argued that there was no cause for his termination and that his termination represented too severe a punishment for his alleged conduct. In an order dated March 21, 2014, the chief administrative law judge preliminarily assigned the burden of proof to TDOC pursuant to Tennessee Rules & Regulations 1360-04-01-.02(3) & (7) (2004) of the Uniform Rules of Procedure for Hearing Contested Cases before Administrative Agencies. The order indicated that if either party wished to contest the determination regarding the burden of proof, it could do so by filing a written brief and memorandum. TDOC filed a written brief and memorandum, arguing that the ultimate burden of proof should be placed on Mr. Pressley because he was the moving party. Mr. Pressley responded in opposition, and the chief administrative law judge ruled at a pre-hearing conference that the issue of burden of proof would be decided by the administrative law judge ("ALJ") who was ultimately assigned to hear the case.

Mr. Pressley's appeal proceeded to a contested hearing on June 23 and August 8, 2014, before the Board. During the hearing, the ALJ presiding over the case upheld the prior ALJ's order assigning the burden of proof to TDOC. After the conclusion of the hearing, the Board issued a final ruling containing detailed findings of fact and conclusions of law. In summary, the Board found that TDOC had failed to carry its burden of proof on all but one alleged act of misconduct. Specifically, the Board found that Mr. Pressley had obtained advance permission from his supervisor to take food from the secure storage area in order to prepare meals for the third shift that evening. Additionally, the Board found that there was not sufficient evidence that Mr. Pressley broke tamper seals to enter the secure food storage area to support his dismissal.

The Board likewise determined that two correctional officers assigned to search the inmates upon the inmates' return to the housing unit found no contraband, food or otherwise, on the inmates Mr. Pressley had been supervising in the kitchen. Accordingly, the Board concluded that TDOC had failed to meet its burden to demonstrate Mr. Pressley had committed a violation of the Post Orders or Tennessee Department of Human Resources Rule 1120.10-.03(2) concerning incompetence. The Board, however, found that TDOC carried its burden of proof with regard to Tennessee Department of Human Resources Rule 1120.10-.03(3) "negligence in the performance of duty," by establishing that Mr. Pressley had failed to file a written report after going into the secure

food storage area. Consequently, the Board issued Mr. Pressley a fourteen-day suspension without pay. The Board denied Mr. Pressley's request for attorney's fees.

Both the State and Mr. Pressley filed petitions for judicial review in the chancery court. For its part, the State argued that the ALJ improperly placed the burden of proof on TDOC in Mr. Pressley's Step III appeal, while Mr. Pressley countered that any punishment was not supported by the evidence adduced before the Board. The two cases were consolidated, and the chancery court ultimately entered an order vacating the Board of Appeals' decision, determining that the ALJ advising the Board of Appeals made an erroneous assignment of the burden of proof during Mr. Pressley's Step III appeal. Accordingly, the chancery court vacated the Board's decision and remanded the case to the Board to apply the burden of proof in the appropriate manner.

Mr. Pressley appealed the chancery court decision to the Tennessee Court of Appeals. The Court of Appeals reversed the chancery court's decision on the allocation of the burden of proof and determined that the State, rather than Mr. Pressley, had the ultimate burden to show cause to sustain the dismissal or suspension of an employee in a Step III appeal pursuant to Tennessee Code Annotated section 8-30-318. Tenn. Dep't of Corr. v. Pressley, M2016-00902-COA-R3-CV, 2016 WL 1559138, at *14 (Tenn. Ct. App. Apr. 14, 2016), appeal granted (Sept. 23, 2016). The Court of Appeals reached this decision based upon its conclusion that preferred service employees under the TEAM Act have a protected property interest in their continued employment. Id. at *12. The Court of Appeals reasoned that, if a preferred service employee has a protected property interest in continued employment, the preferred service employee possesses due process rights that must be protected. Id. at *14. The Court of Appeals then ultimately concluded that the due process protections enjoyed by a preferred service employee required that the State bear the burden of proof at Step III of the TEAM Act's appeals process.[1] Id. Thus, the Court of Appeals held that the Board did not err in requiring the State to prove that there was sufficient evidence for Mr. Pressley's termination and sufficient evidence that the Board's punishment was appropriate. Id. at *15.

As to Mr. Pressley's appeal, the Court of Appeals also concluded that the Board erred in imposing any discipline on Mr. Pressley because of a lack of substantial and material evidence in the record to support the Board's conclusion that Mr. Pressley committed negligence in failing to file an incident report on the night of January 6, 2014. Id. at *17. Finally, the Court of Appeals determined that Mr. Pressley was entitled to

---

[1] The Court of Appeals also held that, like a teacher under the Teacher Tenure Act, see Cooper v. Williamson Cnty. Bd. of Educ., 746 S.W.2d 176, 182 (Tenn. 1987); Saunders v. Anderson, 746 S.W.2d 185, 190 (Tenn. 1987), a preferred service employee first had a de minimis burden to establish a prima facie violation of law before the burden of proof shifted to the State. Pressley, 2016 WL 1559138 at *9-10. That holding is not relevant to our decision in this case.

attorney's fees as the "successfully appealing employee" before the Board of Appeals. Id. at *19. Accordingly, the Court of Appeals reversed the chancery court's judgment in all respects and remanded the case to the chancery court for a determination of Mr. Pressley's reasonable attorney's fees pursuant to Tennessee Code Annotated section 8-30-318(k). Id.

We granted the State permission to appeal to address the question of whether a preferred service employee has a protected property interest in his or her employment under the TEAM Act. If we answer that question in the negative, we then address the issue of whether the language of the TEAM Act itself requires that the State bear the ultimate burden of proof in a post-termination administrative appeal under the TEAM Act. For the reasons stated below, we hold that Mr. Pressley and other similarly situated preferred service employees do not possess a protected property interest in their employment with the State. We also conclude that Mr. Pressley bore the ultimate burden of proof at his Step III hearing. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the Board for further proceedings consistent with this Opinion.

## DISCUSSION

### Standard of Review

Under the TEAM Act, Board of Appeals' decisions are subject to judicial review in accordance with the Uniform Administrative Procedures Act ("UAPA"). Tenn. Code Ann. § 8-30-318(j) (2016). Therefore, this Court, as well as the trial and intermediate appellate courts, reviews the Board's decision under the narrowly defined standard of review contained in the UAPA, Tenn. Code Ann. § 4-5-322(h) (2015 & Supp. 2016), rather than under the broad standard of review used in other civil appeals, Davis v. Shelby Cnty. Sheriff's Dep't., 278 S.W.3d 256, 263-64 (Tenn. 2009). Accordingly, pursuant to Tennessee Code Annotated section 4-5-322:

> The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> > (1) In violation of constitutional or statutory provisions;
> > (2) In excess of the statutory authority of the agency;
> > (3) Made upon unlawful procedure;
> > (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) (A) Unsupported by evidence that is both substantial and material in the light of the entire record.
(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h). Applying this standard of review, a reviewing court may reverse the Board's decision only if one or more of the five enumerated grounds for reversal are present. Id.; Davis, 278 S.W.3d at 264.

This case also involves the application and interpretation of the TEAM Act. Issues of statutory interpretation and the application of a statute to the facts of a case are determinations involving questions of law and are reviewed under a de novo standard with no presumption of correctness afforded to either the trial court or intermediate court of appeals. State v. Sherman, 266 S.W.3d 395, 401 (Tenn. 2008). We independently construe the relevant provisions of the TEAM Act without deference to the interpretations made by TDOC, the chancery court, or the Court of Appeals. See In re Kaliyah S., 455 S.W.3d 533, 552 (Tenn. 2015).

"When engaging in statutory interpretation, 'well-defined precepts apply.'" State v. Howard, 504 S.W.3d 260, 269 (Tenn. 2016) (quoting State v. McNack, 356 S.W.3d 906, 908 (Tenn. 2011)). "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Id. (citing Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995)). The text of the statute is of primary importance. Mills v. Fulmarque, Inc., 360 S.W.3d 362, 368 (Tenn. 2012). When a statute is ambiguous, we may reference the broader statutory scheme, the history of the legislation, or other sources. Sherman, 266 S.W.3d at 401 (citing Parks v. Tenn. Mun. League Risk Mgmt. Pool, 974 S.W.2d 677, 679 (Tenn. 1998)). But when a statute is clear, we simply apply the plain meaning without complicating the task. Id. (citing Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004)).

It is the duty of the Court to reconcile inconsistent or repugnant provisions; to place a construction thereon which will not be prejudicial to the public interest; to construe a statute so that no part will be inoperative, superfluous, void or insignificant, and the one section will not destroy another; and further to give effect to every word, phrase, clause and sentence of the act in order to carry out the legislative intent.

- 6 -

Tidwell v. Collins, 522 S.W.2d 674, 676-77 (Tenn. 1975) (internal citations omitted).

## Analysis

The primary issue we must resolve is which party bears the ultimate burden of proof in this case. Initially, in our efforts to decide this primary issue, we address the threshold issue of whether a preferred service state employee has a protected property interest in his or her continued employment under the TEAM Act. If such an interest exists, we then turn to the question of what process is due to protect that interest and whether a deprivation has occurred. Rowe v. Bd. of Educ. of City of Chattanooga, 938 S.W.2d 351, 354 (Tenn. 1996) (citing Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 577 (1972)). If no such interest exists, we then turn to the final step of our analysis which is to determine whether the statutory language of the TEAM Act, along with its relevant regulations, requires the State or Mr. Pressley to bear the ultimate burden of proof in this action.

## I. Protected Property Interest

The Fourteenth Amendment of the United States Constitution provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. Article I, section 8, of the Tennessee Constitution, Tennessee's "law of the land clause," provides identical due process protections. Bailey v. Blount Cnty. Bd. of Educ., 303 S.W.3d 216, 230 (Tenn. 2010); Lynch v. City of Jellico, 205 S.W.3d 384, 391 (Tenn. 2006) (recognizing that Tennessee's "law of the land clause" is "synonymous with the due process provisions of the federal constitution"). The Fourteenth Amendment's procedural protection of property safeguards the security of interests that a person has already acquired in specific benefits. Rowe, 938 S.W.2d at 354. Property interests protected by the Fourteenth Amendment are not created by the Constitution, but rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source of state law. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985); Roth, 408 U.S. at 577; Bailey, 303 S.W.3d at 230; Freeze v. City of Decherd, Tenn., 753 F.3d 661, 665 (6th Cir. 2014).

To be entitled to procedural due process protection, a property interest must be more than a "unilateral expectation" or an "abstract need or desire." It must be a "legitimate claim of entitlement" to a specific benefit. Rowe, 938 S.W.2d at 354 (citing Roth, 408 U.S. at 577). The hallmark of property, the United States Supreme Court has emphasized, is an individual entitlement grounded in state law which cannot be removed except "for cause." Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982). Once

- 7 -

that characteristic is found, the types of interests protected as "property" are varied and, as often as not, intangible, relating "to the whole domain of social and economic fact." Id.

Thus, our determination of whether Mr. Pressley and other similarly situated preferred service employees possess a constitutionally protected property interest to continued employment is governed by the TEAM Act, its regulations, and other relevant state law. See Roth, 408 U.S. at 577; Bailey, 303 S.W.3d at 230. Accordingly, we turn to the text of the TEAM Act to determine whether the Act creates such an interest.

The Tennessee General Assembly enacted the TEAM Act in 2012, replacing the now repealed Civil Service Act and reforming the State's personnel system. See Tenn. Code Ann. § 8-30-331 (2011), repealed by the TEAM Act, 2012 Tenn. Pub. Acts, ch. 800, § 41, eff. Oct. 1, 2012. The TEAM Act applies to all personnel in the "state service," which includes "all officers and positions of trust or employment in the service of state government in the executive branch and all boards, commissions and agencies of state government" with some express exceptions that have no bearing on this case.[2] See Tenn. Code Ann. § 8-30-102 (2016). The General Assembly's express purpose in enacting the TEAM Act was to:

> [E]stablish in the state a system of personnel administration that will attract, select, retain and promote the best employees based on merit and equal opportunity, and free from coercive political influences. Because the citizens of the state deserve services from the best employees, the goal of the state personnel system is to provide technically competent employees to render impartial services to the public at all times and to render such services in an ethical and honorable manner. Specifically, the intent of the general assembly is to further this purpose by allowing agencies greater flexibility in personnel management in order to enhance the overall effectiveness and efficiency of state government. The general assembly further intends that state government operate within a framework of consistent best practices across all state agencies and entities and that the state's most valued resource, its employees, be managed in a manner designed to enhance

---

[2] The TEAM Act does not apply to employment in the legislative or judicial branches, constitutional officers, the University of Tennessee or Board of Regents systems, the Tennessee Higher Education Commission, the Tennessee Advisory Commission on Intergovernmental Relations, or the Tennessee Housing Development Agency. See Tenn. Code Ann. § 8-30-102(b)(1)-(13).

work force productivity and demonstrate sound business practices.

Tenn Code Ann. § 8-30-101 (2016).

The TEAM Act reformed Tennessee's state employment personnel system by establishing two separate and distinct employment categories under the umbrella of "state service": "executive service" employees and "preferred service" employees. Tenn. Code Ann. § 8-30-201 (2016) ("State service is divided into the preferred service and executive service."). Under the TEAM Act, "[a]n employee in the executive service is an employee at will and serves at the pleasure of the employee's appointing authority," Tenn. Code Ann. § 8-30-202(b) (2016), meaning either the employer or the employee may terminate the employment relationship at any time with or without cause. See Moore-Pennoyer v. State, 515 S.W.3d 271, 278 (Tenn. 2017); Yardley v. Hosp. Housekeeping Sys., LLC, 470 S.W.3d 800, 804 (Tenn. 2015). "Executive service" employees include those state employees who are appointed by the governor; deputy and assistant commissioners (and their employees who serve in a confidential capacity); wardens of correctional facilities and chief officers of mental health institutes; heads of divisions of major units within an agency or regional directors for a state agency who develop or implement policy; highest-ranking agency employees who deal with public information and legislative affairs, fiscal, budget, and audit matters, security or internal affairs, information technology systems, and human resources; and licensed physicians and attorneys. Tenn. Code Ann. § 8-30-202(a).

The TEAM Act specifies that all other full-time positions in the "state service" are classified under the Act's other employment category, the "preferred service." Tenn. Code Ann. § 8-30-202(c). Before a state service employee can become a full-fledged member of the preferred service, he or she must successfully complete a probationary period of employment.[3] Tenn. Code Ann. § 8-30-202(d). "An employee in the preferred service who has successfully completed a probationary period becomes a preferred

---

[3] The TEAM Act specifies that the probationary period commences immediately upon the employee's appointment and continues for a period of time, not less than one (1) year, as established by the commissioner of human resources appointed under section 8-30-104. Tenn Code Ann. § 8-30-308(a).

At any time during the employee's probationary period the appointing authority may remove the employee if, in the opinion of the appointing authority, the employee's performance or conduct during the probationary period indicates that such employee is unable or unwilling to satisfactorily perform or is not satisfactorily performing the employee's duties, or that the employee's habits, dependability, or conduct do not merit continuance in the service.

Id.

- 9 -

service employee and *may* be dismissed, demoted, or suspended for cause." Tenn. Code Ann. § 8-30-316(a) (2016) (emphasis supplied). Section 8-30-316(b) also provides that a preferred service employee "*may*" be dismissed "when the authority determines that the good of the service will be served thereby." Tenn. Code Ann. § 8-30-316(b) (emphasis supplied). "Whenever an employee is dismissed 'for the good of the service,' the notice of termination must outline the reasons for dismissal." Tenn. Code Ann. § 8-30-316(b). Regardless of whether dismissed for cause or dismissed for the good of the service, a preferred service employee's dismissal takes effect "*immediately* after the appointing authority gives notice to such employee and files a written statement with the commissioner." Tenn. Code Ann. § 8-30-316(a) (emphasis supplied). Under the TEAM Act, preferred service employees aggrieved by a disciplinary decision and who have successfully completed their required probationary period are entitled to file a complaint concerning the application of a law, rule, or policy to their dismissal, demotion, or suspension.[4] Tenn. Code Ann. § 8-30-316(f). Executive service employees, by contrast, do not have standing to file a complaint under the statute. Tenn. Code Ann. § 8-30-318(c).

The Court of Appeals reviewed the TEAM Act and concluded that "Mr. Pressley and other similarly situated employees have a 'legitimate claim of entitlement' to continued employment absent cause for their dismissal" because "TDOC was only entitled to dismiss, demote, or suspend Mr. Pressley 'for cause.'" Pressley, 2016 WL 1559138 at *13 (quoting Martin v. Sizemore, 78 S.W.3d 249, 262 (Tenn. Ct. App. 2001)). Thus, according to the Court of Appeals, "the fact that Mr. Pressley could only be dismissed for cause 'plainly supports the conclusion' that [Mr. Pressley] and other similarly situated employees retain a protected property interest in continued employment." Id. (quoting Loudermill, 470 U.S. at 539).

Based upon our review of the entire TEAM Act, we conclude that the Court of Appeals' determination that Mr. Pressley and other similarly situated employees possess a protected property interest in continued employment because preferred service employees can *only* be dismissed "for cause" is erroneous. The language of the statute is clear. Section 8-30-316 of the TEAM Act unambiguously sets out the two separate grounds under which a preferred service employee may be dismissed—dismissal "for cause" pursuant to subsection 316(a) and dismissal for the "good of the service" pursuant

---

[4] The TEAM Act's revised appeal procedure was intended to significantly streamline the time and scope of the state employment grievance/appeal procedure. For those grievances concerning dismissals, demotions, or suspensions of a duration of less than three (3) days, the TEAM Act's right to appeal is limited to an appeal to the commissioner of human resources under Step II of the state service appeal procedure discussed *infra*. See Tenn. Code Ann. § 8-30-318(b), (h)(1)(B). An employee shall not be entitled to appeal a suspension of less than three (3) days to the board of appeals. Tenn. Code Ann. § 8-30-318(b).

to subsection 316(b).  Tenn. Code Ann. § 8-30-316.  While the Court of Appeals rightly noted that "[t]he hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause,'" see Logan, 455 U.S. at 430, it is not the case that Mr. Pressley and other similarly situated "preferred service" employees can be dismissed *only* "for cause."  The TEAM Act gives TDOC the authority to "dismiss *any employee*" if TDOC determines that the good of the service will be served by the dismissal, Tenn. Code Ann. § 8-30-316(b) (emphasis supplied).  "Any employee" includes "preferred service" employees.  Thus, because Mr. Pressley and other similarly situated preferred service employees may be dismissed for the good of the service, as opposed to being dismissed for cause, the isolated "for cause" language relied upon by the Court of Appeals is insufficient to support the determination that the TEAM Act creates a property interest.

Moreover, and perhaps more significantly, even if we assume that the statutory language of the TEAM Act is not clear on its face, a thorough analysis of all provisions of the TEAM Act in light of the prior statutory scheme that the TEAM Act replaced supports our conclusion.  When necessary to resolve a statutory ambiguity or conflict, courts may consider matters beyond the statutory text, including public policy, historical facts relevant to the enactment of the statute, the background and purpose of the statute, and the entire statutory scheme.  Mills, 360 S.W.3d at 368 (citing Lee Med., Inc. v. Beecher, 312 S.W.3d 515, 527-28 (Tenn. 2010)).

A plain reading of the TEAM Act makes clear the Act does not expressly confer a property interest in continued employment on preferred service employees.  By contrast, the Civil Service Act that preceded the TEAM Act contained such an express provision.  The Civil Service Act divided "state service" into "executive" and "career" service positions similar to the TEAM Act's "executive" and "preferred" service classifications.  See Tenn. Code Ann. § 8-30-208 (repealed 2012).  Under the old Civil Service Act, all employees in the career service were required to undergo a probationary period of employment similar to the current scheme for preferred service employees.[5]  See id. § 8-

---

[5] Every person appointed to a position in the career service, after certification of such person's name from a promotion list or an employment list, shall be subject to a probationary period of employment.  The probationary period shall commence immediately upon appointment and shall continue for such time, not less than six (6) months, as shall be established by the commissioner.  At any time during the employee's probationary period, after the first month thereof, the appointing authority may remove the employee if, in the opinion of the appointing authority, the employee's work during the probationary period indicates that such employee is unable or unwilling to perform duties satisfactorily, or that the employee's habits and dependability do not merit continuance in the service.  Upon such removal, the appointing authority shall forthwith report to the commissioner and to the employee removed such action and reason therefor.

30-312 (repealed 2012). However, unlike under the TEAM Act, the old statutory scheme expressly vested an employee who successfully completed their probationary employment period with a property interest in their position with attendant due process protections. See id. § 8-30-331(a) (repealed 2012) ("Employees who have successfully completed their probationary period have a 'property right' to their positions."). Once that property right vested, the statute provided that, "no suspension, demotion, dismissal or any other action which deprive[d] a regular employee of such employee's 'property right'" could become effective until the employee received the statute's minimum due process guarantees. See Tenn. Code Ann. § 8-30-331(a) (repealed 2012). In contrast, the TEAM Act provides explicitly that "the dismissal of a preferred service employee [takes] effect immediately after the appointing authority gives notice to such employee and files a written statement with the commissioner." See Tenn. Code Ann. § 8-30-316(a).

Nevertheless, Mr. Pressley argues that the TEAM Act effectively only provides for "for cause" terminations of preferred service employees because a termination for the "good of the service" is a "for cause" termination by another name. Mr. Pressley reaches this conclusion by seizing on language in section 316(b), which provides, "[a]n appointing authority may dismiss any employee when the authority determines that the good of the service will be served thereby. Whenever an employee is dismissed 'for the good of the service,' *the notice of termination must outline the reasons for dismissal*." Tenn. Code Ann. § 8-30-316(b) (emphasis supplied). Mr. Pressley contends that section 316(b)'s legislative commandment that a preferred service employee's notice of termination must outline the reasons for dismissal transforms section 316(b) into the same type of termination as section 316(a)'s "for cause" dismissal provision. Mr. Pressley interprets this language to mean TDOC could not dismiss him at its pleasure or will, and that such a restriction runs counter to Tennessee's definition of at-will employment.[6]

Rules of statutory construction require us to give meaning to all words of the statute. Tidwell, 522 S.W.2d at 676-77. Were we to construe the good of the service provision to have the same scope and authorization as the for cause provision, we would be ignoring the plain, unequivocal distinction made by the statute and render the good of

---

No more than three (3) employees shall be removed successively from the same position during their probationary periods without the approval of the commissioner.

Tenn. Code Ann. 8-30-312 (repealed 2012).

[6] Tennessee law has long recognized "the employment-at-will doctrine as the 'fundamental principle controlling the relationship between employers and employees.'" Moore-Pennoyer, 515 S.W.3d at 278 (citing Yardley, 470 S.W.3d at 804). This doctrine allows either the employer or the employee to terminate the employment relationship at any time, with or without cause. Id.

- 12 -

the service provision mere surplusage. This we cannot do. <u>See</u> <u>Bailey</u>, 303 S.W.3d at 228 ("This Court has long recognized its duty to construe a statute so that no part will be inoperative, superfluous, void or insignificant.") (citing <u>Tidwell</u>, 522 S.W.2d at 676-77).

We are further guided in our decision by the fact that the former Civil Service Act used, as its chief dismissal mechanism, section 326(a)'s good of the service provision but did not include a for cause termination provision for then-career service employees. In sharp contrast, the TEAM Act includes both a provision authorizing for cause terminations for preferred service employees and a provision separately authorizing terminations for the good of the service for any employee. We do not believe the legislature would have included a new for cause termination provision while maintaining section 326(a)'s good of the service provision without intending for the newly created for cause termination provision to do something separate and distinct from the already existing good of the service provision. To adopt Mr. Pressley's argument that a dismissal for the good of the service is the same as a dismissal for cause would violate long-standing canons of statutory construction. The General Assembly clearly chose to allow dismissals under two separate provisions. Therefore, we decline to adopt Mr. Pressley's argument on this issue.

Additionally, Mr. Pressley's contention that the TEAM Act only permits for cause terminations of preferred service employees misapprehends the scope and function of the TEAM Act's good of the service provision. While most, if not all, terminations for cause also could be terminations for the good of the service, not all terminations for the good of the service will be terminations for cause. The TEAM Act's good of the service provision is a catch-all provision that permits an appointing authority to terminate *any employee* whenever it determines, in its discretion, that the termination will serve the good of the service of the appointing authority. Conversely, the TEAM Act's for cause provision applies solely to terminations of "*preferred service employee[s]*" based on a job-related ground. <u>Compare</u> Tenn. Code Ann. § 8-30-316(b) <u>with</u> Tenn. Code Ann. § 8-30-316(a) (emphasis supplied). Accordingly, we reject Mr. Pressley's argument and conclude that the TEAM Act permits two separate and distinct grounds for the dismissal of a preferred service employee.

Likewise, we are unconvinced by Mr. Pressley's argument that the TEAM Act's implementing regulations establish that preferred service employees have a constitutionally protected property interest. Mr. Pressley hinges this argument specifically on Tennessee Comprehensive Rules and Regulations 1120-02-.11, which provides:

> (1)     Regular Appointment. A regular appointment is an
> appointment to either a preferred, non-preferred or executive

service position for an indeterminate period of time. A regular appointment is expected to continue contingent upon satisfactory performance and behavior by the employee and upon continued funding, classification and utilization of the position by the State. In the executive service, a regular appointment is at-will and continues at the pleasure of the Appointing Authority.

Tenn. Comp. R. & Regs. 1120-02-.11(1) (2017). Mr. Pressley argues that this rule, along with others,[7] is evidence that he and other similarly situated preferred service employees have a legitimate expectation of continued employment with the State because preferred service employees should expect their employment to "continue contingent upon satisfactory performance and behavior," whereas executive service employees do not have the same expectation. Yet, this argument ignores that the regulation also provides that "[a] regular appointment is an appointment to either a preferred, non-preferred or executive service position for an indeterminate period of time." See id. The regulation makes clear that both preferred service and executive service employees are classified as regular appointments and both classes of employees should expect their appointments to continue based on satisfactory performance and behavior by the employee and upon continued funding, classification, and utilization of the position by the State. See id. Simply put, the TEAM Act's implementing regulations do not support Mr. Pressley's argument that preferred service employees have a unique expectation of continued employment that executive service, at-will employees do not.

For all of these reasons, we hold that Mr. Pressley and other similarly situated preferred service employees do not possess a property interest in their continued employment with the State of Tennessee.

The Court of Appeals' holding on the burden of proof was premised on its determination that Mr. Pressley and other similarly situated preferred service employees had a protected property interest in their continued employment. For that reason, it did not construe the TEAM Act's relevant provisions regarding the burden of proof. Thus, even though we have determined that preferred service employees have no such property interest, we still must determine which party ultimately bears the burden of proof in a post-termination Step III administrative appeal under the statutory provisions of the TEAM Act. We turn now to that issue.

---

[7] See Tenn. Comp. R. & Regs. 1120-02-.15(1), (6).

- 14 -

## II.    UAPA Burden of Proof

There is no dispute that Mr. Pressley was a preferred service employee who had successfully completed his probationary period of employment. Accordingly, Mr. Pressley was entitled to the procedural protections attendant to his status as a preferred service employee, specifically, the TEAM Act's appeals process. See Tenn. Code Ann. § 8-30-318. Under the TEAM Act, a preferred service employee "who has successfully completed [his or her] required probationary period, may file a complaint concerning the application of a law, rule, or policy to [his or her] dismissal, demotion, or suspension . . . ."[8] See Tenn. Code Ann. § 8-30-318(b). "A complaint filed under [Tenn. Code Ann. § 8-30-318] must identify the law, rule, or policy that was allegedly violated." Tenn. Code Ann. § 8-30-318(d).

The TEAM Act's appeal procedure is a three-step process. The TEAM Act sets forth Step I, in relevant part, as follows:

> (1)(A) Step I: The complainant shall reduce the complaint to writing and file the complaint with the complainant's appointing authority. The appropriate appointing authority or designee shall conduct any investigation considered necessary, meet with the complainant in person, and issue a decision, in writing, not later than fifteen (15) days after the date the appointing authority receives the complaint. . . .    If the appointing authority does not issue a decision fifteen (15) days after the appointing authority receives the complaint, the complainant may appeal to the commissioner by filing the complaint in accordance with Step II.

The TEAM Act, in pertinent part, specifies the "Step II" appeal procedure as follows:

> (B)(i) Step II: If the appointing authority does not find in favor of the complainant, the complainant may appeal to the

---

[8] (b) An employee in the preferred service system, who has successfully completed the required probationary period, may file a complaint concerning the application of a law rule, or policy to the dismissal, demotion or suspension of the employee. If the term of the suspension is less than three (3) days, the right to appeal is limited to an appeal to the commissioner under Step II, codified as subdivision (h)(1)(B). An employee shall not be entitled to appeal a suspension of less than three (3) days to the board of appeals.

Tenn. Code Ann. § 8-30-318(b). By contrast, "[a]n executive service employee . . . does not have standing to file a complaint under this section." Tenn. Code Ann. § 8-30-318(c).

commissioner of human resources by filing the complaint not later than fourteen (14) days after the date of the appointing authority's written decision. The commissioner of human resources shall review the complaint and the appointing authority's decision, and issue a decision, in writing, not later than thirty (30) days after the date the complaint was filed with the commissioner . . . . If the commissioner does not issue a decision thirty (30) days after the commissioner receives the complaint, the complainant may appeal to the board of appeals in accordance with Step III.

(ii) At Step II of the appeal procedure, it is the duty of the employee to provide written argument to the commissioner setting out why the employee believes the Step I decision was in error and ought to be overturned, reduced, or amended. An employee failing to provide such information to the commissioner shall be considered in default and forfeits the ability to appeal to Step III.

Tenn. Code Ann. § 8-30-318(h)(1)(B)(i)-(ii). Step II of the appeal procedure is only available to the complainant if the appointing authority does not rule in his or her favor in the Step I proceeding. If the parties have not resolved the issue by Step II, either party may appeal the Commissioner's decision from the Step II appeal to the Board of Appeals in a Step III appeal. The TEAM Act provides:

(C) Step III: The complainant or state agency may appeal in writing to the board of appeals not later than fourteen (14) days after the date the complainant, or in the case of a state agency, the state agency receives written notice of the action taken by the commissioner of human resources. Within ten (10) days after the receipt of the appeal, the administrative law judge assigned to assist the board of appeals in the proceedings related to the appeal shall determine whether all previous procedural requirements were completed properly and in a timely manner. If a procedural requirement has not been met, the appeal shall be dismissed. If the procedural requirements have been met, the board of appeals shall conduct proceedings in accordance with the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, as modified herein, to determine if the law, rule, or policy specified in the complaint was violated.

- 16 -

Tenn. Code Ann. § 8-30-318(h)(1)(C).  As the Act sets forth, the Board of Appeals in a Step III appeal "shall conduct proceedings in accordance with the Uniform Administrative Procedures Act . . . to determine if the law, rule, or policy specified in the complaint was violated."  See id.

In Mr. Pressley's Step III appeal before the Board of Appeals, the ALJ presiding over the case ruled that TDOC bore the ultimate burden of proof.  The ALJ charged the Board of Appeals as follows:

> This third step hearing I would remind you is a de novo hearing.  In other words, the parties are starting over.  The State must prove its case by evidence presented in this hearing.  There's no presumption of correctness that attaches to the decision at Step I or Step II below.  The State has disciplined the Complainant by termination.  The State has the burden of proof.  The Complainant does not have any burden to show that he is not guilty of the violations charged.  The State has the burden to prove that (1) the violations charged are true; (2) that it took appropriate disciplinary action.  These must be shown by a preponderance of the evidence. . . .

The chancery court disagreed and determined that the Board of Appeals made an erroneous assignment of the burden of proof.  The chancery court reasoned that "[s]trongly implicit in [Tenn. Code Ann. § 8-30-318's] description of [section 8-30-318's] appeal right, . . . is that the non-prevailing party at the Step II procedure has the burden of proof at the next level of the process, which is the Board of Appeals."  The chancery court explained its decision as follows:

> Reading [Tennessee Code Annotated section] 8-30-316 together with [Tennessee Code Annotated section] 8-30-318, there is no adverse employment action and hence no appeal until the State agency employer has given written notice to the employee and the Commissioner of Human Resources, that the disciplinary action is being taken.  That is the triggering event for the employee to file a Step I complaint.  Mr. Pressley here did so, asserting that [] there was no cause for his dismissal.  And because he did not prevail at Step I, he had the opportunity to, and did move forward to Step II, again to assert that the Department of Correction had no cause to

dismiss him. The Step II decision, however, by Rebecca Hunter, the Commissioner of the Department of Human Resources, was to uphold the dismissal, on the basis that the information given to her by the parties for consideration had indicated culpable wrongdoing by Mr. Pressley. Thus, when Mr. Pressley appealed that determination to Step III, the Board of Appeals, it was his burden to go forward at Step III to show that there was no cause for him to be dismissed. The Court thus finds that the Board of Appeals did apply an erroneous burden of proof.

Accordingly, the chancery court held that Mr. Pressley bore the ultimate burden of proof before the Board of Appeals and remanded the case to the Board of Appeals for a new hearing consistent with its burden of proof determination.

As set forth above, although based upon different reasoning, the Court of Appeals reversed and determined that TDOC, rather than Mr. Pressley, had the ultimate burden of proof.

The TEAM Act specifies that, in a Step III appeal, the Board of Appeals "shall conduct proceedings in accordance with the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, as modified herein, to determine if the law, rule, or policy specified in the complaint was violated." Tenn. Code Ann. § 8-30-318(h)(1)(C). The UAPA mandates that "[t]he secretary of state shall adopt by rule, promulgated in accordance with the rulemaking requirements of this chapter, a manual of policies and procedures, including a code of conduct, to be followed by all administrative judges and hearing officers." Tenn. Code Ann. § 4-5-321(b) (2015). The Secretary of State did so and promulgated the "Uniform Rules of Procedure for Hearing Contested Cases before State Administrative Agencies" (hereinafter "Uniform Rules"), see generally Tenn. Comp. R. & Regs. 1360-04-01.-01-.20, which govern contested proceedings before all agencies that have adopted the Rules. These are the rules that administrative judges rely upon in all contested cases utilizing judges from the Administrative Procedures Division of the Office of the Secretary of State, whether sitting alone or with the agency, Tenn. Comp. R. & Regs. 1360-04-01-.01. TDOC is one such agency, and accordingly, the Uniform Rules apply to TDOC employees' contested case proceedings.

The Uniform Rules are not silent on the issue of the burden of proof and address its allocation by the ALJ in Tennessee Comprehensive Rules and Regulations 1360-04-01-.02(3), (7). The Uniform Rules provide that the "petitioner" in a contested case proceeding is the "moving" party, i.e., the party who has initiated the proceedings. See Tenn. Comp. R. & Regs. 1360-04-01-.02(3). Likewise, the "respondent" in a contested

case proceeding is the party who is responding to the charges or action brought by the "petitioner." <u>See</u> Tenn. Comp. R. & Regs. 1360-04-01-.02(4). The Uniform Rules contemplate that, generally, the petitioner bears the ultimate burden of proof:

> The petitioner usually bears the ultimate burden of proof and will therefore present his or her proof first at the hearing. In some cases, however, the party who initiated the proceedings will not be the party with the burden of proof on all issues. In such cases, the administrative judge will determine the order of proceedings, taking into account the interests of fairness, simplicity, and the speedy and inexpensive determination of the matter at hand. The "petitioner" is usually a state agency or department.

Tenn. Comp. R. & Regs. 1360-04-01-.02(3). The Uniform Rules define "burden of proof" as follows:

> (7) Burden of Proof—The "burden of proof" discussed in the definition of "petitioner" above refers to the duty of a party to present evidence on and to show, by a preponderance of the evidence, that an allegation is true or that an issue should be resolved in favor of that party. A "preponderance of evidence" means the greater weight of the evidence or that, according to the evidence, the conclusion sought by the party with the burden of proof is the more probable conclusion. The burden of proof is generally assigned to the party who seeks to change the present state of affairs with regard to any issue. The administrative judge makes all decisions regarding which party has the burden of proof on any issue.[9]

Tenn. Comp. R. & Regs. 1360-04-01-.02(7). Accordingly, because the petitioner initiates the proceedings and typically is trying to change the present state of affairs with regard to an issue, the petitioner generally is assigned the burden of proof.

In the present matter, Mr. Pressley was a preferred service employee who was terminated by a dismissal letter dated January 8, 2014, from the Warden of the MCCX.

---

[9] The Uniform Rules provide that the ALJ has discretion to allocate the burden of proof to either party on any issue in a contested case before the Board of Appeals if she determines "the interests of fairness, simplicity, or the speedy and inexpensive determination of the matter" necessitate such an allocation. Tenn. Comp. R. & Regs. 1360-04-01-.02(3).

Under the TEAM Act, the termination of a preferred service employee takes effect immediately upon notice to the employee and to the Commissioner of Human Resources. Tenn. Code Ann. § 8-30-316(a). Thus, Mr. Pressley's termination became effective upon receiving his notice of dismissal and the filing of a written statement with the Commissioner by the Warden.

In reaching its decision, the Court of Appeals commented that "it could be argued that either party was seeking to change the present state of affairs—Mr. Pressley by appealing the denial of his Step II appeal to the board of appeals or the State by seeking to change Mr. Pressley's employment status." Pressley, 2016 WL 1559138 at *9. This reasoning misapprehends the nature of Mr. Pressley's employment and the structure of the TEAM Act.

When Mr. Pressley was dismissed by letter on January 8, 2014, his termination became final, effective January 17, 2014.[10] Nothing more was required under the TEAM Act to permanently sever Mr. Pressley from his employment with the State. The present state of affairs when Mr. Pressley filed his Step I complaint with the Commissioner of TDOC was that he was no longer a preferred service employee. Following his failure to obtain a favorable resolution at both his Step I and Step II proceedings, Mr. Pressley's employment status with the State remained unchanged. He still was no longer a preferred service employee. Thus, when Mr. Pressley initiated his Step III appeal before the Board of Appeals, he was the "party [seeking] to change the present state of affairs" with regard to his termination and should have been assigned the ultimate burden of proof. See Tenn. Comp. R. & Regs. 1360-04-01-.02(7).

In the instant case, on the advice of the ALJ, the Board placed the ultimate burden of proof on the State. This was improper for the reasons stated above. Accordingly, we hold the Board erred when it assigned the ultimate burden of proof to TDOC to sustain Mr. Pressley's termination for cause. As noted by the chancery court:

> The Board struggled with the burden of proof, struggled with the absence of some proof, and relied heavily on its conclusion that the Department did not carry its burden. The Final Order of the Board of Appeals thus states – in every place in which Mr. Pressley has been absolved of wrong-

---

[10] We note that Mr. Pressley's termination letter did not specify under which subsection of the TEAM Act he was terminated. While not required by statute, better practices for all agencies terminating employees under the TEAM Act would be to specify whether an employee is being terminated under subsection 316(a)'s for cause provision or subsection 316(b)'s good of the service provision. See Tenn. Code Ann. § 8-30-316(a), (b).

doing – that the Department did not carry the burden.  That is
why Mr. Pressley was reinstated.

Like the chancery court, we cannot specifically predict what the Board of Appeals would do if it had correctly assigned the ultimate burden of proof.  Accordingly, we remand this case to the Board of Appeals for the proper assignment of the burden of proof and a resolution of this matter.  All other issues raised by the Parties are pretermitted.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the Court of Appeals.  We remand the case to the Board of Appeals for all necessary proceedings consistent with this Opinion.

_____
JEFFREY S. BIVINS, CHIEF JUSTICE