IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 26, 2024 Session

## JACK SCOTT v. TENNESSEE DEPARTMENT OF TRANSPORTATION

**Appeal from the Chancery Court for Trousdale County**
**No. 7770     Charles K. Smith, Chancellor**

_____

### No. M2023-00422-COA-R3-CV

_____

The Tennessee Department of Transportation terminated a preferred service employee. Following the Step I and Step II appeals, the Board of Appeals upheld the termination. The employee petitioned for judicial review in the trial court. The trial court initially affirmed the Board of Appeals' decision. The trial court then granted the employee's motion to alter or amend and reversed the decision of the Board of Appeals. We reverse the trial court's order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Jonathan Skrmetti, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Ryan Nicole Henry, Assistant Attorney General, for the appellant, Tennessee Department of Transportation.

Jonathan H. Wardle, Lebanon, Tennessee, and Zach Taylor, Hartsville, Tennessee, for the appellee, Jack Scott.

### OPINION

### I.     BACKGROUND

Petitioner-Appellee Jack Scott was a preferred service employee who worked within the Tennessee Department of Transportation ("TDOT") for nearly twenty years. In January of 2019, Petitioner injured his back at work by jumping off a TDOT backhoe to avoid an accident with an out-of-control vehicle. After the injury, Petitioner was frequently absent

from work, sometimes a couple of days per month, other times four or five days per month. These absences were not always related to illness or to the injury. He received medical treatment and was cleared to return to light-duty work on January 25, 2019. TDOT established duties for Petitioner to perform in accordance with the light-duty restrictions. On several subsequent occasions, Petitioner presented a doctor's note with revised restrictions allowing for light-duty work. Each time, TDOT set duties for him to perform in line with those restrictions. A doctor's note cleared Petitioner to return to regular duty work without restrictions on June 13, 2019, and again on July 25, 2019.

Petitioner earned sick leave and annual leave for every month of work. However, after exhausting those leave balances, he repeatedly took off days for personal reasons unrelated to the injury. An employee is in leave without pay status on any day he or she misses work without the annual or sick leave to cover the time off. From January 2019 through January 2020, Petitioner was on leave without pay status for some 80 workdays. The reasons for these absences included "back pain," "did not call in," "doctor statement back pain," "two-day suspension," "doctor appointment," and "unexcused absence." Employees who are continually in unapproved leave without pay status are subject to discipline, up to and including termination.

Petitioner was disciplined throughout 2019 for repeated attendance issues, his attitude in work communications, and violations of Tennessee Department of Human Services Rules. For instance, Petitioner received a written warning on March 5, 2019, for failure to maintain satisfactory and harmonious working relations with the public and fellow employees, conduct unbecoming an employee in State service, and insubordination. Petitioner invited the warning by refusing to report to a mandatory work day when ordered to do so by his supervisor and telling the supervisor that he "would just have to write [Petitioner] up." Petitioner admitted to making a lewd comment in this instance.

Petitioner received a two-day suspension in September of 2019, for violations including failure to maintain satisfactory and harmonious working relationships with fellow employees, conduct unbecoming of an employee in State service, violation of the State Code of Conduct, and violation of the workplace violence prevention policy. The two-day suspension was the consequence of Petitioner's use of expletives when telling his supervisor he would be absent from work and then threatening to beat the supervisor's eyes out of his head after the supervisor informed Petitioner he needed to submit a doctor's note. Petitioner admitted to this, to generally locking horns with his supervisor, and to using vulgarity in work communications on multiple occasions. His justification was that he was suffering pain at the time. The written notice of the two-day suspension cited previous written warnings Petitioner had received for failure to maintain harmonious working relationships and for unbecoming conduct. The notice warned that such behavior would

not be tolerated and that continued actions such as those "will result in further disciplinary action, up to and including dismissal from State service."

On November 21, 2019, Petitioner received an oral warning for taking time off on November 4 and 5 for personal reasons without approval from his supervisor and without any accrued leave time. Soon after, Petitioner received a written warning dated December 19, 2019, for inefficiency in the performance of duties and a habitual pattern of failure to report for duty at the assigned time and place. This was because on November 25 and 27 Petitioner failed to report to work for personal reasons. He did so without the supervisor's approval and without having any accrued leave time. The December 19 notice reminded Petitioner that he had been warned already about "the need for a positive leave balance and usage, the consequences of being in a Leave without Pay (LWOP) status, and the requirement to provide a doctor's excuse when absent due to illness." Like the previous disciplinary notices, the December 19 notice admonished Petitioner that if the pattern of misconduct continued, he could be dismissed from State employment.

Petitioner again failed to report to work from January 27 through February 3, 2020, without the supervisor's approval and without accrued leave time. In a February 3, 2020, text message Petitioner called his supervisor a vulgar term when explaining his absence. Petitioner cited the need to be absent during this time due to back pain and related injections. On February 4, 2020, TDOT terminated Petitioner's employment. The notice advised:

> This disciplinary action is taken based on violations of the following Tennessee Department of Human Resources (DOHR) Rules and/or policies:
>
> - DOHR Rule 1120-10-.03(6): Failure to maintain satisfactory and harmonious working relationships with the public and fellow employees; [and]
>
> - DOHR Rule 1120-10-.03(8): Habitual pattern of failure to report for duty at the assigned time and place.

The February 4 notice also stated that "the same or similar rule infractions" had occurred four prior times in 2019, and that Petitioner's "continued behavior in violation of State and departmental rules and policies" resulted in the decision to terminate his employment.

After receiving the termination notice, Petitioner obtained a doctor's note dated February 5, 2020. The note requested that Petitioner be excused from work for the dates of January 27 to February 5, 2020. The note did not specify that Petitioner was seen by the doctor or that he was unable to work during the specified time period. On February 19,

2020, Petitioner appealed his termination pursuant to the internal appeal procedure for preferred service employees, Tennessee Code Annotated section 8-30-318.[1] After Petitioner's termination, TDOT obtained an inmate charge history dated February 19, 2020, which revealed that Petitioner spent the night of Thursday, January 30, 2020, and part of Friday, January 31, 2020, in jail at the Trousdale County Sheriff's Department on certain charges. Following the Step I appeal, the TDOT Commissioner upheld Petitioner's termination. Following the Step II appeal, the Commissioner of the Department of Human Resources upheld the termination. Each of the written decisions corresponding to the Step I and Step II appeals mentioned Petitioner's brief incarceration and his wife's explanation that it all amounted to a family matter which had since been resolved.

On May 6, 2020, Petitioner filed a Step III appeal to the Board of Appeals ("the Board"). An August 26, 2020 hearing was scheduled before the Board.[2] TDOT's list of proposed exhibits included the inmate charge history. During a pre-hearing conference, the ALJ excluded the inmate charge history on Petitioner's motion. Prior to the Step III hearing, the sitting board members were provided with the record of the case, which included the Step I and Step II complaints and decisions. These decisions referred to Petitioner's arrest and incarceration in January 2020, although the inmate charge history was excluded per the ALJ's ruling.

The Board conducted the hearing on Petitioner's Step III appeal, as scheduled. Several witnesses testified. Petitioner's supervisor testified that his crew "couldn't do a lot of [its] work" when Petitioner was absent because they simply "didn't have enough people." The assistant director of TDOT Human Resources testified that an employee on leave without pay status "is always subject to discipline" and that presenting the February 5 doctor's note did not mitigate the fact that Petitioner lacked the annual leave or sick leave balance to be absent at all during the relevant time period, especially without prior approval. During the hearing, one of the three Board members inquired, "Now, was one of the things that troubled TDOT with regard to [Petitioner's] absences from January 27th to February 5th an issue that [he] may have been incarcerated for part of that time?" The ALJ promptly interjected that such information "was ruled to be irrelevant[,] [s]o it's not part of the information that the Board needs to consider." Petitioner objected and a discussion was held with the ALJ outside of the Board's presence. Petitioner contended

[1] *See* Tenn. Code Ann. § 8-30-316(f) ("A preferred service employee is entitled to appeal a dismissal, demotion, or suspension as provided in § 8-30-318."). Section 8-30-318 was amended in 2022. The amendments apply to appeals initiated on or after July 1, 2022. *See* 2022 Tenn. Pub. Acts, ch. 655, § 30. The former version of section 8-30-318 applies to Petitioner's appeal initiated in February of 2020.

[2] Tennessee Code Annotated section 8-30-318(h)(2) provides that "Each hearing under this chapter shall occur before a panel of at least three (3) members of the board of appeals, assisted by one (1) administrative law judge (ALJ)."

that "[t]here was not supposed to be anything about any type of incarceration or arrest. And I'm concerned because a – the panel knows about that somehow." The ALJ clarified that the pre-hearing conference was about "the admission of the jail record. It was excluded." The ALJ explained that the Step I and Step II decisions were "part of the technical record" provided to the Board before the Step III hearing. The ALJ noted that "[t]here was no motion or request for redaction of those documents[,] so they remain as part of the technical record. I'll give [the Board members] an instruction that they're to disregard it." Petitioner requested a mistrial, but the ALJ denied the request. The ALJ reminded the parties that following the pre-hearing ruling to exclude the inmate charge history, he had "asked if there were any other corrective actions that counsel wanted" and heard none. Once the proceedings before the Board members resumed, the ALJ instructed the inquiring Board member, "The last question you asked is one that concerned information that's in the technical record that's not relevant to the charges [in the termination notice], the only two elements. And it must be disregarded by the Board."

Based on the evidence adduced at the Step III hearing and by final order entered August 28, 2020, the Board upheld Petitioner's termination from State service. The order outlined Petitioner's disciplinary history and found that Petitioner's "absences made it difficult for the [TDOT] unit to complete its assigned work, and [his] argumentative and unharmonious behavior negatively impacted employee morale." The Board further found that Petitioner failed to correct his unacceptable behavior despite multiple disciplinary actions. The Board concluded that Petitioner did not meet his burden[3] "to prove by a preponderance of the evidence that [TDOT] violated any law, rule, or policy in issuing [the] termination or that [TDOT] lacked cause to terminate his employment."

On October 16, 2020, Petitioner sought review of the Board's decision in the Trousdale County Chancery Court ("trial court"), pursuant to the Uniform Administrative Procedures Act, Tennessee Code Annotated section 4-5-322.[4] The petition did not specify the ground(s) under which reversal or modification of the Board's decision was warranted. Rather, Petitioner broadly asked for "judicial review of this matter" and to be reinstated to his employment with back-pay. By order entered April 8, 2022, the trial court affirmed the Board's decision and dismissed the petition. The court concluded that there was substantial and material evidence in the administrative record "to support the sanction of termination, and termination was an appropriate disciplinary action in this case."

---

[3] *See Tennessee Dep't of Correction v. Pressley*, 528 S.W.3d 506, 512 (Tenn. 2017) (holding that an aggrieved employee in a post-termination administrative appeal under section 8-30-318 bears "the ultimate burden of proof at [the] Step III hearing.").

[4] "Decisions of the board of appeals are subject to judicial review in accordance with the Uniform Administrative Procedures Act and the rules and regulations promulgated thereunder, in each case as amended in this chapter." Tenn. Code Ann. § 8-30-318(j).

On May 4, 2022, Petitioner moved the trial court to alter or amend its judgment under Tennessee Rule of Civil Procedure 59.04.  In the motion, Petitioner disputed certain factual findings in the Board's order.  He also argued that "you cannot unring the bell" because the Board members received information the ALJ excluded following a pre-hearing motion in limine.  Petitioner asserted that the ALJ abused his discretion in denying his request for a mistrial.  TDOT opposed Petitioner's motion, arguing that none of the grounds for relief under Rule 59.04 were present and that Petitioner received a fair hearing.  TDOT also asserted that Petitioner had not raised the evidentiary issue in his original petition for judicial review, so it was "too late [] to raise a new argument for consideration in a Rule 59.04 Motion."  By order entered February 23, 2023, the trial court reversed the Board's decision.  The court found that, under section 4-5-322(h), Petitioner's rights had been prejudiced because the Board's "findings and conclusion/decision" were "made upon unlawful procedures of the agency presenting evidence to the Board that had been excluded by the Administrative Law Judge."  The court also found that the ALJ's declining to grant a mistrial "after finding out that the Board had received information from the technical record about [Petitioner's] incarceration after said evidence had been excluded" amounted to an abuse of discretion under section 4-5-322(h)(4).  TDOT appealed.

## II.     ISSUES

TDOT raises two issues on appeal:

A. Whether the trial court erred in granting Petitioner's motion to alter or amend and reversing the Board's decision, when the motion to alter or amend was based on a ground Petitioner should have raised in his petition for judicial review.

B. Alternatively, whether the Board of Appeals properly upheld Petitioner's termination from employment by [TDOT], even though the Board received the Step I and Step II decisions, which made reference to inadmissible evidence.

## III.     STANDARD OF REVIEW

The Tennessee Supreme Court has explained the standard for reviewing Tennessee Board of Appeals decisions as follows:

> [T]his Court, as well as the trial and intermediate appellate courts, reviews the Board's decision under the narrowly defined standard of review contained in the UAPA, Tenn. Code Ann. § 4-5-322(h) (2015 & Supp. 2016),

- 6 -

rather than under the broad standard of review used in other civil appeals, *Davis v. Shelby Cnty. Sheriff's Dep't*, 278 S.W.3d 256, 263–64 (Tenn. 2009). Accordingly, pursuant to Tennessee Code Annotated section 4-5-322(h):

The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) (A) Unsupported by evidence that is both substantial and material in the light of the entire record.

(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h).[5]  Applying this standard of review, a reviewing court may reverse the Board's decision only if one or more of the five enumerated grounds for reversal are present.  *Id*.; *Davis*, 278 S.W.3d at 264.

---

[5] The General Assembly amended section 4-5-322(h)(5), "appli[cable] to disciplinary actions taken or information first received on or after the effective date of" May 18, 2021.  Tenn. Pub. Acts, Ch. 461, § 6.  Petitioner received the notice of dismissal in 2020, so the former version of the statute applies.

*Pressley*, 528 S.W.3d at 512.  Moreover, "[n]o agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision."  Tenn. Code Ann. § 4-5-322(i).

The substantial and material evidence standard "requires something less than a preponderance of the evidence, but more than a scintilla or glimmer."  *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988) (citations omitted).  The standard does not justify reversal solely because the evidence could support another result.  *Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001).  Instead, the decision should be upheld if the administrative record "furnishes a reasonably sound factual basis for the decision being reviewed."  *City of Memphis v. Civ. Serv. Comm'n*, 216 S.W.3d 311, 317 (Tenn. 2007) (quoting *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 111 (Tenn. Ct. App. 1993)).

## IV.   DISCUSSION

The second issue TDOT raises on appeal is dispositive.  TDOT concedes that the Board's having learned of Petitioner's "incarceration via references in the technical record did run afoul of the ruling to exclude such evidence from the hearing."  TDOT maintains that this did not prejudice Petitioner's rights, given the Board's fleeting consideration of the information and the ALJ's curative instruction.  TDOT further argues that substantial and material evidence supports the Board's decision.  Petitioner points out that the Board member who briefly inquired about his incarceration is one of the two members who voted to uphold the termination.  Petitioner presses that the Board's receiving the information rendered the Step III proceeding invalid.  He maintains that the ALJ's curative instruction to disregard the information was insufficient.  We agree with TDOT.

During the Step III hearing, TDOT did not elicit evidence or discussion about Petitioner's incarceration.  Instead, such information was noted in the written Step I and Step II decisions, so it was included in the record before the Board due to statutory procedure.  The statute's plain language directs the Department of Human Resources to forward the Step I and Step II decisions to the Board members:

> The department shall forward the record of the case, which consists of the Step I complaint, the Step I decision, the Step II complaint and the commissioner's Step II decision, to sitting board members prior to the Step III meeting for preliminary review.  Evidentiary attachments to the aforementioned documents shall not be considered part of the record and shall not be submitted to the board members prior to the Step III hearing[.]

- 8 -

Tenn. Code Ann. § 8-30-318(i)(4). The ALJ's ruling on Petitioner's pre-hearing motion in limine excluded only the inmate charge history, and such document was not in the record before the Board. Petitioner could have, but did not, move to redact references to the incarceration from the Step I and Step II decisions.

The ALJ also clarified that the "documents that are in the technical record are not considered evidence unless they are admitted into evidence. But they are available for reference if it's needed." Petitioner did not object to any aspect of the technical record when it was introduced. At the beginning of the Step III hearing, the Board members were instructed to "only consider evidence that is admitted during the hearing" to reach their decision. The Board was further instructed: "In deciding this case you may not draw an inference from an unanswered question, and you may not consider testimony that you were instructed to disregard. . . . Any excluded information cannot be considered in reaching your decision." The Step I and Step II decisions were not admitted into evidence. When one Board member inquired about Petitioner's incarceration, the ALJ promptly stopped the proceeding and issued a curative instruction to the Board to disregard anything relating to that information. Under these circumstances, we cannot agree with the trial court's finding that the Board's decision was made upon unlawful procedure.

Moreover, a fair reading of the Board's deliberations and final order does not suggest that the Board was swayed by one member's inquiry about the one fact concerning Petitioner's brief incarceration. The Board's deliberations focused on the evidence that Petitioner violated the Tennessee Department of Human Resources Rules and policies. Assuming *arguendo* that it was error for the Board to have received unredacted copies of the Step I and Step II decisions referencing the incarceration, this did not affect the merits of the Board's decision in light of the substantial and material evidence in the record supporting the conclusion that Petitioner violated the two Rules cited in the notice of termination. Tenn. Code Ann. § 4-5-322(i). The record clearly shows that, after receiving medical clearance to return to work, Petitioner was absent for many days without having enough annual or sick leave, threatened his supervisor with violence, displayed an unharmonious attitude, and used language too colorful for the workplace when speaking to peers and to his superior. Petitioner was allowed several chances to correct this behavior before TDOT's decision to terminate his employment.

In sum, we discern no reversible error in the ALJ's conduct of the Step III hearing. We agree with the Board that Petitioner failed to demonstrate a right to relief by a preponderance of the evidence. *Pressley*, 528 S.W.3d at 512. The Board's decision to uphold Petitioner's termination was predicated on substantial and material evidence. Accordingly, the Board properly dismissed Petitioner's Step III appeal and upheld TDOT's termination of his employment. Upon our review, we conclude that none of the grounds

for reversal or modification of the Board's decision specified in section 4-5-322(h) apply to the record before us.  Therefore, we affirm the Board's decision.

## V.    CONCLUSION

For the foregoing reasons, we reverse the trial court's February 23, 2023 order.  We affirm the August 28, 2020 order of the Board of Appeals.  The case is remanded for such further proceedings as may be necessary and consistent with this opinion.  Costs of the appeal are taxed to the appellee, Jack Scott.


_____
JOHN W. McCLARTY, JUDGE