IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 3, 2019 Session

**TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES v. KAVIANDRA JAMES**

**Appeal from the Chancery Court for Davidson County**
**No. 18-0421-II      Anne C. Martin, Chancellor**

_____

**No. M2019-00070-COA-R3-CV**

_____

A preferred-service employee with the Department of Children's Services was terminated for accessing a case file involving her sister and sending an email to the case manager assigned to her sister's case and the case manager's supervisor, with a copy to her sister. The employee ultimately appealed her termination to the Board of Appeals of the Department of Human Resources, which modified her termination to a suspension without pay and reinstated her with back pay. The Department appealed to chancery court, which affirmed the Board's determination. Upon a thorough review of the record, we affirm the judgment of the trial court and remand the case to the Board of Appeals for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Eugenie B. Whitesell, Senior Assistant Attorney General, and Matthew D. Janssen, Assistant Attorney General, for the appellants, Tennessee Department of Children's Services.

Jonathan R. Stephens, Nashville, Tennessee, for the appellee, Kaviandra James.

**OPINION**

**I. FACTUAL AND PROCEDURAL HISTORY**

Kaviandra James was employed as a Case Manager 4 and a Team Leader with the

Department of Children's Services ("DCS" or "the Department") for nine years and was a preferred service employee[1]; at all times pertinent hereto, she was assigned to the Smoky Mountain region. Ms. James was terminated as a result of an investigation by DCS Internal Affairs Division, during which she was interviewed by Regional Special Investigator Bartley Jenkins. The investigation revealed, and Ms. James admitted, that she used her employee login credentials to access confidential information regarding her sister's active Child Protective Services case and sent an email to her sister's case manager and the manager's supervisor, with copy to her sister; the investigation later determined that the email contained information maintained in her sister's file that was confidential under DCS policy. Ms. James also admitted that she informed her supervisor of her actions soon after she sent the email.

On August 22, 2017, Ms. James received a letter, notifying her of DCS Commissioner Bonnie Hommrich's ("Commissioner") decision to terminate her, effective September 1, stating that she violated section 4.10 of DCS' Administrative Policies and Procedures governing Conflicts of Interest[2] and Tennessee Department of Human Resources Rule 1120-10-.03, sections 15, 24, and 26. Ms. James exercised her right to appeal her termination as granted in the Tennessee Excellence, Accountability, and Management Act ("TEAM Act"), Tennessee Code Annotated section 8-30-301, et seq., in accordance with the three-step appeal procedure at section 8-30-318.[3]

---

[1] Tennessee Code Annotated section 8-30-202 distinguishes executive service positions in state government from preferred service positions. Generally, a person holding an executive service position is an employee at will and serves at the pleasure of the employee's appointing authority; executive service positions include any officer or employee appointed by the governor and all positions in the governor's office; any deputy commissioner or equivalent authority in each department or state agency; any assistant commissioner or equivalent authority in each department or state agency; wardens and directors of correctional facilities and chief officers of mental health institutes; the head of a division or major unit within a state agency or a regional director or manager for a state agency; and the highest ranking employee of a state agency. Tenn. Code Ann. § 8-30-202(a), (b). "All other full-time positions in state service are in the preferred service." Tenn. Code Ann. § 8-30-202(c).

[2] Section 4.10 provides, in pertinent part:

"All employees of the Department of Children's Services are prohibited from any action that might result in or create the appearance of:
Using public office for private gain
Giving preferential treatment to any…employee or relative…"

[3] The TEAM Act grants employees in the preferred service the right to appeal a dismissal, demotion or suspension. At Step I of the procedure, the employee files a written complaint with the "appointing authority" that identifies the law, rule, or policy that the employee alleges was violated; the complaint is then investigated and a written decision rendered. Tenn. Code Ann. § 8-30-318(d), (h)(1)(A). If the employee is not successful, the employee is permitted at Step II to file the complaint with the commissioner of human resources, who is to review the complaint and the Step I decision, and issue a decision. Tenn. Code Ann. section 8-30-318(h)(1)(B). At Step III, the employee (or the agency) may appeal the decision of the commissioner of human resources to the board of appeals of the department of

Ms. James timely filed a Step I appeal on September 5 pursuant to the Tennessee Excellence, Accountability, and Management Act ("TEAM Act"), asserting that her termination did not comport with Tennessee Code Annotated section 8-30-316, which provides that a preferred service employee can only be dismissed for cause or for the good of the service. Nicole Ramey, employed in the DCS Office of Civil Rights, who had been designated to conduct the Step I proceeding, concluded that "DCS management did not violate any law, rule, or policy in issuing the termination to [Ms. James]; considering all factors, the termination is warranted and is upheld."

On October 2, Ms. James filed a timely Step II appeal to the Commissioner of Human Resources; on October 19, the Commissioner upheld the termination.

Ms. James filed a timely Step III Appeal, and a hearing was held on February 9 before the Board of Appeals ("the Board"), assisted by Administrative Law Judge Kim Summers ("ALJ"). The Board entered a final order on February 20, making findings of fact and stating the following:

Conclusions of Law

1. DCS alleged that complainant violated the following Department of Human Resources rules:

    a. 1120-10-.03(15), participation in any action that would in any way seriously disrupt or disturb the normal operation of the agency, institution, department or any other segment of state service or that would interfere with the ability of management to manage,
    b. 1120-01-.03(24), unauthorized disclosure of confidential information,
    c. 1102-10-.03(26), for the good of the service as outlined in T.C.A. section 8-30-316 and
    d. DCS Administrative Policies and Procedures no. 14.7 — conflict of interest.[4]

2. The preponderance of the evidence shows complainant's actions did not violate Department of Human Resources rules1120-10-.03 (15) because

human resources, which conducts its proceedings in accordance with the Uniform Administrative Procedures Act, Tennessee Code Annotated 4-5-322, to determine "if the law, rule, or policy alleged in the complaint was violated." Tenn. Code Ann. section 8-30-318(h)(1)(C).

[4] There is no DCS Administrative Policies and Procedure numbered "14.7" in the record. Taken in context, it appears that the Board intended to refer to policy 4.10, which was cited in the termination letter and is quoted in footnote 2, *supra*.

there was no proof in the record that complainant's conduct "seriously disrupt[ed] or disturb[ed] the normal operation" of DCS.

3. The preponderance of the evidence shows complainant's actions did not violate Department of Human Resources rules1120-10-.03 (24).

4. The preponderance of the evidence shows complainant's actions did not violate Department of Human Resources rules 1120-10-.03 (26), for the good of the service as outlined in T.C.A section 8-30-316, because DCS did not take any action to modify, limit or relieve her of duties during the twenty-eight (28) days following her self-reporting until her termination.

5. The preponderance of the evidence shows complainant's actions did violate DCS Administrative Policies and Procedures no. 14.7, conflict of interest, by creating an appearance of a conflict of interest by using her position to attempt to help her family member obtain needed services from DCS.

6. The preponderance of the evidence, based upon the totality of the circumstances, shows the complainant's termination is not supported by the evidence in which complainant was approximately a sixteen (16) year veteran of DCS; had no prior discipline; self-reported her actions; and DCS took no action to modify, limit or relieve her of her duties during the twenty-eight (28) days following her self reporting until her termination on August 22, 2107.

Determination

The Board of Appeals determines that complainant's appeal seeking the dismissal of complainant's termination imposed by the Department of Children's Services is supported by a preponderance of the evidence and should be and is hereby MODIFIED to a thirty (30) calendar day suspension without pay.

The Department of Children's Services is ordered to reinstate complainant to the position she held with the Department of Children's Services at the time of her termination. The Department of Children's Services is also ordered to delete any and all references to the said termination from all of complainant's personnel records, where ever they may be retained; reimburse complainant for all lost back wages, lost annual leave, lost sick leave, lost service time except for the period of the thirty (30) calendar day suspension; and award complainant all other benefits to which she may be entitled.

- 4 -

The Department of Children's Services is also ordered to pay all of complainant's reasonable attorneys' fees and costs pursuant to the schedule for payment of attorneys' fees and costs promulgated by the Administrative Office of the Court and upon the express approval of the Department of Human Resources.

Policy

The degree of disciplinary action imposed by the Department of Children's Services is not necessary for the Department of Children's Services to maintain an effective and efficient workplace so that it can accomplish its statutory mission.

DCS filed a Petition for Judicial Review of the Final Order of the Board on April 16, 2018, in Davidson County Chancery Court, requesting the court to "reverse the Board's Final Order and enter an order upholding the termination of Ms. James, [or] alternatively, . . . to vacate the Board's order and remand this matter for further proceedings . . ." A hearing was held on November 20, and the court entered an Order and Memorandum on December 13, holding that the Board's decision was "supported by substantial and material evidence in the record, conform[ed] with applicable law, [was] not arbitrary or capricious and was not made upon unlawful procedure." The court affirmed the order reinstating Ms. James and awarding her back pay and related benefits.[5] DCS appeals.

## II. STANDARD OF REVIEW

Tennessee Code Annotated section 4-5-322(h) of the Uniform Administrative Procedures Act ("UAPA") provides the standard of review for courts considering an administrative decision:

(h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;

---

[5] Though the order characterized the above relief as being authorized by Tennessee Code Annotated section 8-30-118, such a section does not exist. We assume the court intended to refer to section 8-30-318(k) and (l), which address the authority of the Board to award attorney's fees, back pay, and reinstatement to a successfully appealing employee.

(3) Made upon unlawful procedure;
(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

   (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322. A reviewing court should generally defer to an administrative agency's decision when it is acting within its area of specialized knowledge, experience, and expertise. *Williamette Indus., Inc. v. Tennessee Assessment Appeals Comm'n*. 11 S.W.3d 142, 146 (Tenn. Ct. App. 1999) (citing *Wayne Cnty. v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279 (Tenn. Ct. App. 1988)). This Court reviews the factual findings of the Board under the limited provisions of Tennessee Code Annotated section 4-5-322, and we review matters of law *de novo* with no presumption of correctness. *Davis v. Shelby County Sheriff's Dept.*, 278 S.W.3d 256, 264 (citing Tenn. R. App. P. 13(d); *Cumulus Broad, Inc. v. Shim*, 226 S.W.3d 366, 373 (Tenn. 2007)).

### III. ANALYSIS

As an initial matter, we address DCS' argument that the Board's decision modifying Ms. James' termination was in excess of its statutory authority because the Board did not find that DCS "violated the law, rule or policy specified in [Ms. James'] complaint." While acknowledging that Ms. James alleged in her complaint that she was terminated in violation of Tennessee Code Annotated section 8-30-316 because there was no "cause" for her termination, DCS argues that the Board's review "focused exclusively on DCS's termination notice and whether the evidence supported the reasons for termination in the notice." DCS' argument is premised on a construction of the TEAM Act that requires the Board to find that DCS violated Tennessee Code Annotated section 8-30-316 in order to set aside Ms. James' termination, and that the Board made no such finding; we do not agree that the statute operates in that fashion under the facts presented.

The Board of Appeals is established at Tennessee Code Annotated section 8-30-108; subsection (f) gives it jurisdiction to hear appeals of preferred service employees at Step III of the appeal process. The Board's authority relative to such appeals is derived from the rules and regulations adopted by the Commissioner of the Department of Human Resources and contained at Tennessee Rules and Regulations 1120-11-.04, section (3)(f) of which grants the Board the "full authority to overturn, reduce, or amend the disciplinary action based on the information submitted for consideration, including

- 6 -

reinstatement of leave and awards of back pay, if appropriate."[6]

Contrary to DCS' argument, there is no statute or regulation that makes the Board's authority contingent upon a determination that DCS itself has violated a law, rule, or policy; rather, implicit in the authority granted the Board at Step III of the appeal proceeding is the ability to determine whether the facts and circumstances constitute "cause" for termination within the meaning of section 8-30-316. The Board acted within the authority granted it by law and regulation when it assessed the factual and legal "cause" for Ms. James' termination, held that the evidence did not support Ms. James' termination "for cause" within the meaning of section 8-30-316, and granted her relief. Accordingly, we proceed to review the Board's decision to reinstate her.[7]

Ms. James initiated Step III by executing a form in which she stated the following as the reason for her appeal:

> The Department of Children's Services (the "Department") terminated complainant in violation of the provisions of the T.E.A.M. Act of 2012, specifically, T.C.A. 8-30-316, *Dismissal, demotion or suspension for cause* and Department of Human Resource Rule 1120-10, *Disciplinary action*. Complainant submits the Department did not have "cause" to discipline complainant per the statutory and regulatory sections cited above because complainant's action did not violate any act enumerated in Department of Human Resource Rule 1120-10-.03, *Examples of disciplinary offenses*. Complainant further contends that the Department took this disciplinary action in violation of the T.E.A.M. Act of 2012.

As relief, Ms. James requested that her job and leave be reinstated and that she receive back pay.

At the hearing, the ALJ began by providing preliminary instructions to the Board relative to the roles of the ALJ and the Board, telling the Board that the "burden of proof" was on Ms. James, and advising that, consistent with the burden of proof, "[Ms. James]

---

[6] Tennessee Code Annotated section 8-30-104(a)(2) grants the Commissioner of the Department of Human Resources the authority to prescribe rules and regulations for the administration and execution of the state service in accordance with the UAPA; section 8-30-105 provides that the rules adopted have the force and effect of law.

[7] Our resolution of this issue also addresses the concern raised by DCS that the final order does not comply with the requirement at Tennessee Code Annotated section 8-30-318, that the Board "conduct proceedings in accordance with the Uniform Administrative Procedures Act . . . to determine if the law, rule, or policy specified in the complaint was violated." The conduct of the proceedings and the Board's order complied with the requirements of the statute.

will be going first with the opening statements and presentation of their case."[8]  DCS' counsel restated the burden of proof in her opening statement, stating that "it is not the Department's burden to prove that there was ample cause to terminate Ms. James, but rather Ms. James' burden to prove by a preponderance of the evidence that the Department violated a law, rule, or policy."  Following the statements of counsel, Ms. James was the first witness.

Ms. James testified that DCS had an "open case" in the Knox region that involved her sister's child, and her sister had called her to discuss the case; that Ms. James accessed her sister's file on the Department's case management system and determined that "the prior case manager and current case manager had not been doing their duties to provide services to the client and to make sure the child himself was safe"; that she sent the email at issue to the child's case manager and the manager's supervisor; that she reported her actions to her immediate supervisor, Laura Dockery, an hour or two later; that she admitted her actions in a signed statement she gave as part of the DCS Internal Affairs investigation; and that following her report and the investigation, she was not reassigned or restricted from her duties or removed.

Ms. James acknowledged that she violated DCS administrative policy 9.5[9]; that the only recipients of the email were the case manager who was assigned to her sister's case, the case manager's supervisor, and her sister; that her action implicated two provisions of DCS' *Employee Conflict of Interest Statement*, a form she signed in 2015 and 2016.[10]  She testified that her actions complied with DCS policy 4.10 because "when

---

[8] The ALJ stated that "Our burden of proof, I'm sure you all know, has been in a state of flux over the last few years that the TEAM Act has been in existence.  I believe that we do now have a final decision on the burden of proof, and it is squarely on the shoulders of the complainant."  We presume that the ALJ was referring to the case of *Tennessee Department of Correction v. Presley*, 528 S.W.3d 506 (Tenn. 2017), decided five months before the hearing.

[9] DCS Administrative Policy 9.5, *Access and Release of Confidential Child-Specific Information*, states:

> The Department of Children's Services (DCS) ensures that records and information maintained by DCS are confidential and only accessed or released according to State and Federal laws, DCS Rules, Regulations and Policies. The access and release of confidential child-specific information, regardless of media, will be limited to individuals, agencies and organizations which demonstrate a "need and right to know" or received written authorization from the child/youth or their legal representative.

[10] The *Employee Conflict of Interest Statement* sets out a statement of actions that are to be avoided by the employee as those that:

> . . . might result in or create the appearance of [. . .] using public office for private gain; giving preferential treatment to any person; impeding government efficiency or economy; losing complete independence or impartiality; making a government decision outside of official channels; affecting adversely the confidence of the public in the integrity of the

[she] recognized . . . that [she] made an error [she] went to her supervisor at the earliest time [she] could"; that she did not violate Rule 1120-10-.03(15)[11] because "no disruption occurred because [she] was not removed from any of [her] duties . . . it didn't require any redistribution of duties to others . . ." ; that termination was not the appropriate action because she "has done multiple things to help support the development of services to clients" and has "been doing it for a very long time"; and that some other discipline would be appropriate. With respect to her overall performance as a DCS employee, she testified that she had received "valued" performance ratings from 2014 through 2016, as evidenced by the performance evaluations which were referenced in the Step I decision,[12] and that there was no prior disciplinary action on her employment record.

The next witness, called by Ms. James, was Mary Killion, Youth Service Officer and Juvenile Court Administrator for Claiborne County Juvenile Court. She testified that she had observed Ms. James in court; that Ms. James was an honest, diligent worker; that she had never seen Ms. James be admonished by a judge for her professional behavior; and that she did not have firsthand knowledge of the reason Ms. James was terminated.

Following the completion of Ms. James' proof, DCS proceeded to call Wendy Forster, DCS Regional Administrator for the Smoky Mountain region, whose testimony focused on the reason Ms. James was terminated. She testified that Ms. James' action in reviewing her sister's case file and sending the email was serious enough to warrant

---

government.

The Statement also contains specific standards prohibiting the use of information obtained in the course of employment or government property for personal gain, and directing the employee to consult the Department's Ethics Compliance Officer "when [the] employee is in doubt as to the proper interpretation of this conflict of interest statement." On cross-examination, Ms. James identified "making a government decision outside of official channels" and "not talking to my attorney first" when asked to identify "[the] sections [ ] you believe you violated."

[11] Tenn. Comp. R. & Regs. 1120-10-.03(15) states:

> The following are examples of acts that may warrant disciplinary action. This list is not exclusive and shall not be construed to limit an Appointing Authority's discretion in disciplinary matters:
> * * *
> (15) Participation in any action that would in any way seriously disrupt or disturb the normal operation of the agency, institution, department, or any other segment of the state service or that would interfere with the ability of management to manage

[12] The Step I decision in Ms. James' appeal identified performance evaluations for the periods November 1, 2013-September 30, 2014, October 1, 2014-September 30, 2015, and October 1, 2015-September 30, 2016, as information reviewed by the DCS Commissioner; Ms. James received a "valued performance" rating on each evaluation. The Step I decision was provided to the members of the Board prior to the Step III hearing. *See* Tenn. Code Ann. § 8-30-318(i)(4).

termination because "there has to be an awareness of what a conflict of interest is and being able to determine what is and is not a conflict. . ." and that Ms. James was aware of the DCS confidentiality and conflict of interest policies because "there is . . . supervisory training, and . . . annual reminders [that] this is the policy." With respect to the Department's handling of the matter, she testified that the reason there was a time gap between the investigation of Ms. James' conduct and her termination letter being issued was that "[DCS] had to determine what the extent of the policy violation was . . . and . . . the severity of the action"; and that the termination had to "get the appropriate approvals all the way to the Commissioner." Related to the particular violation, she testified that that Ms. James violated DCS conflict of interest policy when she became aware that her sister had a case and proceeded to review the case; that there was not a policy in place, as of the date Ms. James sent the email, that explicitly restricted Ms. James from accessing and reading a case file that was outside of her region; and that there were a variety of disciplinary options that could have been taken by DCS depending on the nature of the offense. As justification for Ms. James' termination, Ms. Forster stated that "there has to be that level of trust that the employee can continue to make sound decisions not based on emotion. . ." and that DCS should be able to trust that an employee is "able to move forward and know that they are able to focus on job responsibilities and what falls under [the employee's] direct supervision."

No further testimony was introduced.[13]

Following the closing arguments, the ALJ again instructed the Board relative to the burden of proof, stating that "at this Step III hearing [Ms. James] now has the burden of proving by a preponderance of the evidence that the discipline was in violation of a state law, rule, or policy"; that "in making findings of fact [the Board] must make [its] own evaluation of the testimony. . . and any documentary evidence admitted"; and that the Board must "give testimony or other evidence the weight and credibility [it] deem[s] proper. . . in light of [its] own training and expertise." After deliberating, the Board rendered its decision.

DCS argues that the trial court erred in affirming the Board's holding; in addition to the contention that the Board exceeded its authority when it modified the termination without finding that DCS violated the statute identified by Ms. James in her complaint, which we have previously resolved, DCS asserts that the Board erroneously placed the

---

[13] Also introduced as exhibits at the hearing were: Ms. James' email regarding her sister's case; Ms. James' signed statement admitting that her actions violated DCS policy; DCS' administrative policies 4.10 *Conflicts of Interest*, 9.4 *Confidential Client-Specific Information*, 9.5 *Access and Release of Confidential Client-Specific Information*, and 14.13 *Confidentiality of Child Protective Services Cases*; Ms. James' termination letter; the Step I and II decisions; DCS' *Confidentiality Statement and Employee Conflict of Interest Statement*; Tennessee Code Annotated sections 37-1-612, 37-1-409, and 37-5-107; the Department of Human Resources Code of Conduct; and a screenshot of Ms. James' sister's case profile.

burden of proof on DCS, and that the holding that Ms. James did not violate Tennessee Rules and Regulations 1120-10-.03(24) is unsupported by the evidence.

### A. The Burden of Proof

DCS contends that the Board's decision to modify the termination was made on unlawful procedure in that the Board "effectively shifted the burden of proof to DCS" rather than Ms. James, and that the Board "was assessing whether the evidence proved that [Ms. James] *had* violated the rule or policy – it was not assessing, as it should have been, whether the evidence proved that she *had not* violated the rule or policy." (Emphasis in original). This argument is without merit.

In her complaint, Ms. James asserted that her termination violated Tennessee Code Annotated section 8-30-316 because DCS did not have "cause" to terminate her, and that her termination "did not violate any act enumerated in Department of Human Resources Rule 1120-10-.03." At the hearing, she admitted that her conduct in sending the email violated DCS policy 9.5 and the DCS Employee Conflict of Interest Statement; thus, the issue before the Board was whether there was "cause" for her termination within the meaning of section 8-30-316, i.e., whether the facts justified her losing her employment. As reflected in the statement of Policy, the Board answered that question in the negative.

We do not agree with DCS that "an employer's for-cause termination of a preferred service employee would violate Tenn. Code Ann. § 8-30-316 only if the employee did not engage in the conduct that the employer cited as cause for termination" and that Ms. James' burden was "to prove that she did not engage in the misconduct cited by DCS, i.e., that she did not violate the rules and policies listed in her termination notice." This argument ignores and would negate the "full authority" given the Board at Rule 1120-11-.04 "to overturn, reduce or amend the disciplinary action based on the information submitted for consideration, including reinstatement of leave and awards of back pay."

The evidence before the Board included the facts that gave rise to Ms. James being disciplined, testimony as to her performance as an employee of DCS, and the reasons given for her termination; pertinent to this determination, the record shows that Ms. James was allowed to continue in her capacity as Team Leader without limitation or modification of her duties for twenty-eight days following her self-report, and that she had positive performance evaluations and had not been disciplined during her sixteen year employment with DCS. This is substantial and material evidence that supports the Board's decision to modify the penalty for her violation of DCS policy; upon our review, the Board did not shift the burden of proof to DCS and Ms. James satisfied her burden to show that the circumstances presented did not establish cause for her dismissal.

### B. Holding With Respect to Rule 1120-10-.03(24)

DCS contends that the Board's determination that Ms. James' action did not violate Tennessee Rules and Regulations 1120-10-.03(24) is not supported by substantial and material evidence.

At the hearing, Ms. James admitted that her actions violated DCS Policy 9.5, which states:

> The Department of Children's Services ensures that records and information maintained by DCS are confidential and only accessed or released according with State and Federal Laws, DCS Rules, Regulations and Policies. The access and release of confidential child-specific information, regardless of media, will be limited to individuals, agencies and organizations which demonstrate a "need and right to know" or received written authorization from the child . . . or their legal representative.

DCS argues that Ms. James' admission is evidence that preponderates against the holding that she did not violate Rule 1120-10-.03(24). Based on our review of the Board's deliberations, however, it is clear that the Board did not treat Ms. James' admission that she violated DCS policy 9.5 in that manner; rather, the members of the Board considered the admission and determined that her action did not violate the Rule.

In the deliberations, member Rita Roberts-Turner stated, in pertinent part, that "the testimony here was that [Ms. James' sister] certainly knows everything that was happening . . . [and] was conveying that to [Ms. James], and [Ms. James] was conveying that to the people involved in this case." She considered the Employee Confidentiality Statement that Ms. James had signed and concluded that the reason Ms. James sent the email was consistent with the provision in the statement that states: "All information that I have access to via computer, telephone, files or through employees will be held in strict confidence and not shared with parties outside the realm identified for carrying out the responsibilities of my position and insuring care and the securement of services for program enrollees, clients, and/or employees." In his discussion of confidentiality, Chair Jonathan Steen stated that "the idea of confidentiality and the critical nature of confidentiality is not lost on [him]; however, the person who the information was disclosed to was a person involved in the case and not some third-party." Relative to this item, board member Lee Ann Foster stated that the Board "agreed . . . [Ms. James] admitted to violating [DCS Policy 9.5]."

After deliberating, the Board voted on each conclusion of law.[14] With respect to

---

[14] Both parties had previously filed a proposed order. After completion of the testimony, Judge Summers instructed the members of the Board to discuss the facts, the law, and a potential recommendation

Conclusion of Law 3, Ms. Roberts-Turner quoted Rule 1120-10-.03(24) and moved that the Board hold that "the preponderance of the evidence shows [Ms. James'] action did not violate the Department's rule." Each Board member voted in favor of the motion.

Tennessee Rules and Regulations 1120-10-.03(24) states:

The following are examples of acts that may warrant disciplinary action. This list is not exclusive and shall not be construed to limit an Appointing Authority's discretion in disciplinary matters:

\*\*\*

(24) Unauthorized disclosure of confidential information;

The Board determined that, under the circumstances presented, Ms. James' act did not constitute an unauthorized disclosure of the information. As noted earlier, as a reviewing court, we defer to the Board's decision and do not substitute our judgment. This is particularly true where we are reviewing the agency's interpretation of its own rules. *See Moore v. Neeley*, No. W2006-00438-COA-R3-CV, 2006 WL 3371132, at \*5 (Tenn. Ct. App. Oct. 6, 2006) (citing 33 Charles Alan Wright & Charles H. Koch, Jr., *Federal Practice and Procedure* § 8353 (2006)). Inherent in the Board's holding that the Rule was not violated was the determination that other evidence outweighed Ms. James' admission that she violated DCS policy. Thus, we conclude that the record contains substantial and material evidence supporting the Board's decision.

### C. The TEAM Act

DCS also contends that the Board's final order violates the TEAM Act because the Board "failed to satisfy the statutory requirement that it determine whether the law specified in [Ms. James'] complaint was violated." This is an extension of DCS' argument, which we have previously rejected, that the TEAM Act requires the Board to find that DCS violated Tennessee Code Annotated section 8-30-316 in order to set aside the termination. Accordingly, this argument is without merit.

### IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Chancery Court. We remand the case with instructions for the trial court to remand the case to the Board of Appeals for such further proceedings as may be necessary, in accordance with this

---

regarding the disciplinary action and, then, to review the parties' proposed orders to determine which would be an appropriate guide for crafting the Board's order. The Board then proceeded to deliberate and vote separately on each of the conclusions of law which are contained in the Final Order quoted above. The conclusion pertinent to this discussion is number 3.

opinion.


_____
RICHARD H. DINKINS, JUDGE