IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 15, 2023 Session

ERICK GORDON v.
TENNESSEE DEPARTMENT OF SAFETY AND HOMELAND SECURITY

Appeal from the Chancery Court for Greene County
No. 2020-CV-388                    Douglas T. Jenkins, Chancellor

———————————————

No. E2022-01175-COA-R3-CV

———————————————

The petitioner's employment as a Tennessee highway patrolman was terminated for cause after he attended a training course on breathalyzer machines and, as part of the training, submitted two breath samples that returned positive numbers for alcohol content in his blood. The petitioner appealed, but his termination was upheld in the first two steps of the internal appeals process by the respondent, the Tennessee Department of Safety and Homeland Security ("the Department"). The petitioner appealed to the Tennessee Board of Appeals, which conducted a hearing on the matter. Prior to the hearing, Mr. Gordon filed a motion *in limine*, seeking to exclude the two breathalyzer test results on grounds that the tests were not conducted in compliance with the evidentiary requirements for breathalyzer test results. The Board declined to exclude the breathalyzer test results and upheld the petitioner's termination, ending the Department's internal appeals process. The petitioner sought judicial review with the trial court. The trial court reversed and modified the Board's decision, determining that the Board improperly considered the numeric breathalyzer test results and that without them there was no substantial and material evidence remaining to support the Board's decision to terminate Mr. Gordon's employment. Nonetheless, the trial court determined that some discipline was warranted and accordingly ordered the Department to reinstate the petitioner with back pay and benefits to one year following his dismissal, in effect sanctioning petitioner with a one-year suspension without pay. The Department timely appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KRISTI M. DAVIS, J., joined.

Jonathan Skrmetti, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Eugenie B. Whitesell, Senior Assistant Attorney General; for the appellant, Tennessee Department of Safety and Homeland Security.

Bryce W. McKenzie and Bryan E. Delius, Sevierville, Tennessee, for the appellee, Erick Gordon.

**OPINION**

I.  Factual and Procedural Background

The underlying facts of this case are largely undisputed.  On January 17, 2020, the petitioner, Erick Gordon, a trooper with the Tennessee Highway Patrol ("THP"), attended a training session conducted at the Cocke County THP post located in Newport, Tennessee. The training session was being conducted to certify THP officers in the use of two types of alcohol breathalyzer machines:  the Alco-Sensor VXL ("Alco-Sensor") and the Intoximeter EC/IR II ("EC/IR II").  As part of the training, Mr. Gordon was paired with another officer, and each was asked to provide a breath sample by blowing into the machines while the other officer administered the test and checked the results.  When Mr. Gordon blew into the Alco-Sensor machine, the instrument registered that his breath sample showed a .037 blood alcohol content ("BAC") level.  At the time Mr. Gordon blew into the Alco-Sensor, Mr. Gordon had tobacco "dip" in his mouth.  Approximately two minutes after the Alco-Sensor machine registered Mr. Gordon's first BAC reading of .037, the class instructor, Agent Dave Ferguson of the Tennessee Bureau of Investigation ("TBI"), asked Mr. Gordon to rinse the tobacco from his mouth and to provide a second sample utilizing the EC/IR II machine.  The second sample registered a BAC level of .033.

Until these readings were obtained, no one who had interacted with Mr. Gordon before or during the training session that morning had expressed suspicion that Mr. Gordon had consumed alcohol while on duty or that he was under the influence of alcohol or any other drug.  Mr. Gordon's positive BAC results nevertheless precipitated an investigation, during which Mr. Gordon admitted that he had been drinking the night before and that on the morning of the training, he had arrived at work late and with a headache.  Mr. Gordon was terminated "for cause" as a result of the Department's determination that he had arrived at work on January 17, 2020, under the influence of alcohol in violation of several Department policies.

Mr. Gordon appealed his termination pursuant to the internal appeals process for public officers and employees of the State of Tennessee as set forth in the Tennessee Excellence Accountability and Management Act of 2012, codified at Tennessee Code Annotated §§ 8-30-101, *et seq.* ("the TEAM Act").  The Department upheld Mr. Gordon's termination in the first two steps of the TEAM Act appeals process.  Mr. Gordon then

initiated the third step of the appeals process, and a hearing was scheduled before the Tennessee Board of Appeals ("the Board").

Prior to the hearing before the Board, Mr. Gordon submitted a motion *in limine* seeking to exclude from evidence the numeric results of the two breathalyzer tests obtained from him during the certification class on grounds that they were inadmissible under the standards set forth by the Tennessee Supreme Court in *State v. Sensing*, 843 S.W.2d 412, 416 (Tenn. 1992). Mr. Gordon also urged the Board to exclude the test results because they had been used as evidence against him in violation of the Department's General Order 220(V)(B), which permits testing for alcohol only upon "reasonable suspicion or obvious hindrance to [an officer's job] performance." The Board heard oral argument concerning the motion *in limine* on August 12, 2020, and subsequently entered an order denying the motion. In its order, the Board determined that Mr. Gordon had not provided any "reasonable basis" for applying the factors from *Sensing* to the breathalyzer test results because this was "not a criminal case where many of the concerns raised by [Mr. Gordon's] counsel may be present[.]" The Board further stated that the concerns raised in the motion *in limine* could be addressed at trial "through opening statements, closing arguments, examination and cross-examination of witnesses, rebuttal proof, and instructions to the Board members."

On September 25, 2020, the Board conducted a hearing relative to Mr. Gordon's appeal, during which it heard testimony from several witnesses. The numeric results of Mr. Gordon's breathalyzer tests were introduced into evidence through the testimony of Agent Ferguson and the breathalyzer instrument printouts taken on the morning of the training class. On October 9, 2020, the Board entered an order ("the Final Order") denying Mr. Gordon's step-three appeal and concluding the internal appeals process. In the Final Order, the Board determined that Mr. Gordon had "failed to meet his burden of proof[1] by showing by a preponderance of the evidence that 'the Department violated a law, rule, or policy specified in the complaint.'" The Board did not elaborate on this finding but concluded the Final Order by listing the rules of conduct and Department policies Mr. Gordon had violated predicated on its conclusion that Mr. Gordon had arrived at his post on January 17, 2020, under the influence of alcohol. In its findings of fact, the Board relied on the BAC numbers from the two breathalyzer tests in rendering its determination that Mr. Gordon had arrived at work under the influence of alcohol:

---

[1] The Department correctly states, and Mr. Gordon does not dispute, that the "party appealing at the Step III level bears the burden of proof," citing *Tenn. Dep't of Corr. v. Pressley*, 528 S.W.3d 506, 523 (Tenn. 2017). Indeed, subsequent to the initiation of this action, the Tennessee legislature has amended the statute to include this burden of proof effective July 1, 2022 as follows: "The appealing party, whether it be the employee or appointing authority, bears the burden of proof during the Step III proceeding[.]" *See* Tenn. Code Ann. § 8-30-318(h)(1)(C)(ii) (Supp. 2023); 2022 Tenn. Pub. Acts, Ch. 655, § 22 (S.B. 2422).

On the evening of January 16, 2020, [Mr. Gordon] admitted consuming several alcoholic beverages and fell asleep around midnight. However, he was awakened between 2 a.m. and 4 a.m., after experiencing a panic attack due to his previous military deployment. Mr. Gordon admitted he went into the kitchen and poured an unknown amount of vodka in a cup in an effort to fall back asleep. [Mr. Gordon] was scheduled to work on January 17, 2020, at 7 a.m. and checked in late. [Mr. Gordon] dressed in his class A uniform and put on his duty belt, which contained his department issued handgun and ammunition. [Mr. Gordon] then drove his marked patrol vehicle from his residence in Greeneville, Tennessee to the Cocke County THP post located in Newport, Tennessee.

At the Cocke County THP Post, [Mr. Gordon] attended a training class on alcohol breathalyzer machines. The class was taught by TBI Special Agent Dave Ferguson and was scheduled to start at 9:00 AM EST. [Mr. Gordon] arrived late for the training and, after entering the Post, [Mr. Gordon] retrieved a Goody's Powder for a headache. [Mr. Gordon] admitted that he was experiencing the signs of a "hangover." As part of the training, [Mr. Gordon] submitted a breath sample into the [Alco-Sensor] machine at 9:55 AM and the result was .037. [Mr. Gordon] submitted a second breath sample into the [EC/IR II] machine at 9:56:44 AM and the result was .033. Both machines had been properly certified prior to the class. Based on Agent Ferguson's testimony, using .015 as a typical metabolic rate/elimination rate, and using the lowest documented sample submitted of .033, [Mr. Gordon's] alcohol level at 8:03 AM EST when he checked in-service, has been estimated to be .053.

(Emphasis added.) Based on these facts, the Board upheld Mr. Gordon's termination.

Mr. Gordon timely appealed the Board's decision to the Greene County Chancery Court ("trial court") in accordance with statutory authority. *See* Tenn. Code Ann. § 8-30-318(j) (2018) ("Decision[s] of the [Board] are subject to judicial review in accordance with the Uniform Administrative Procedures Act[, codified at Tennessee Code Annotated §§ 4-5-101, *et seq.* ("UAPA")] and the rules and regulations promulgated thereunder[.]"); Tenn. Code Ann. § 4-5-322(a)(1) (2019) ("A person who is aggrieved by a final decision [of the Department] in a contested case is entitled to judicial review[.]"). The trial court entered an order on August 10, 2022, reversing and modifying the Board's decision upon concluding that the Board had "improperly considered the objective readings—the numbers—from [Mr. Gordon's] breathalyzer tests [administered during the training]." The trial court found that the "results [of the breathalyzer tests] should not have been admitted [at the Board hearing] for the purpose of proving levels of blood alcohol content." The trial court concluded:

After reviewing the record and considering the arguments of counsel, the Court finds that the Board's decision and all previous decisions erroneously considered the breathalyzer results as outlined above and in [Mr. Gordon's] brief; therefore, previous decisions were based upon improper application of the laws and evidentiary rules regarding breathalyzer results as outlined in [Mr. Gordon's] brief. Further, once the unreliable objective data from the breathalyzer results is excluded, there is no substantial or material evidence that Mr. Gordon was "under the influence" on the morning of January 17, 2020, in fact, the evidence preponderates otherwise.

The previous decision to terminate Mr. Gordon is hereby reversed and modified. The Court finds that termination is improper and not supported by the evidence, but some discipline is warranted by the circumstances. [Mr. Gordon] shall be reinstated back to the day of his dismissal after being cleared for duty by the appropriate psychological personnel (given his allegations of PTSD symptoms as a part of his defense). [Mr. Gordon] shall also be awarded back pay and benefits back to one year following his dismissal (in effect a one-year suspension without pay), together with statutory attorney fees.

The Department timely appealed. On September 7, 2022, Mr. Gordon filed a motion seeking an award of attorney's fees. Mr. Gordon sought payment of $28,598.80 for attorney's fees incurred, as supported by his attorneys' affidavits and billing records. Meanwhile, the Department filed a motion for stay of judgment pending appeal.

On December 13, 2022, the trial court entered an order denying Mr. Gordon's request for an award of attorney's fees incurred in the judicial review proceeding. The court also denied Mr. Gordon's request for an award of attorney's fees incurred in the administrative proceedings and remanded the matter to the Board "for further proceedings regarding the award of attorney fees, as provided by Tenn. Code Ann. § 8-30-318(k)." The court granted the Department's motion to stay the final judgment pending appeal, reciting that all issues had been adjudicated in the case. The Department then filed a second notice of appeal "out of an abundance of caution."

## II. Issue Presented

The Department presents the following issue for this Court's review, which we have restated slightly:

> Whether the trial court erred by reversing and modifying the Tennessee Board of Appeals' decision upholding Mr. Gordon's termination from employment when Mr. Gordon purportedly failed to

prove under Tennessee Code Annotated § 8-30-318(h)(1)(C) that his termination violated any law, rule, or policy.

## III. Standard of Review

Our review of the trial court's judgment following a non-jury trial is *de novo* upon the record with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). "In order for the evidence to preponderate against the trial court's finding of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn. 2011).

With respect to the standard for reviewing Tennessee Board of Appeals decisions, the Tennessee Supreme Court has explained:

> [T]his Court, as well as the trial and intermediate appellate courts, reviews the Board's decision under the narrowly defined standard of review contained in the UAPA, Tenn. Code Ann. § 4-5-322(h) (2015 & Supp. 2016), rather than under the broad standard of review used in other civil appeals, *Davis v. Shelby Cnty. Sheriff's Dep't,* 278 S.W.3d 256, 263-64 (Tenn. 2009). Accordingly, pursuant to Tennessee Code Annotated section 4-5-322(h):
>
> > The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> >
> > (1)    In violation of constitutional or statutory provisions;
> >
> > (2)    In excess of the statutory authority of the agency;
> >
> > (3)    Made upon unlawful procedure;
> >
> > (4)    Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)　　(A)　Unsupported by evidence that is both substantial and material in the light of the entire record.

(B)　In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h). Applying this standard of review, a reviewing court may reverse the Board's decision only if one or more of the five enumerated grounds for reversal are present. *Id*.; *Davis*, 278 S.W.3d at 264.

*Tenn. Dep't of Corr. v. Pressley*, 528 S.W.3d 506, 512 (Tenn. 2017). Moreover, "[n]o agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision." Tenn. Code Ann. § 4-5-322(i) (2021).

## IV.  Admissibility of Breathalyzer Test Results under *Sensing*

In its appellate brief, the Department argues that the Board properly upheld Mr. Gordon's termination from employment because Mr. Gordon did not meet his statutory burden to "identify the law, rule, or policy that was allegedly violated" by the Department in terminating his employment. Tenn. Code Ann. § 8-30-318(d).[2] Mr. Gordon counters that the trial court correctly reversed and modified the Board's decision because he successfully proved before the Board that his termination was unsupported by the evidence and that he was terminated in violation of Tennessee law and Department rules.

In determining that the Board had erred in upholding Mr. Gordon's termination, the trial court relied on the arguments and law presented in Mr. Gordon's brief, wherein he posited that the breathalyzer test results at issue were entered into evidence despite the testing officer's failure to follow the proper protocols for administering them as outlined in *Sensing*, 843 S.W.2d at 416. The *Sensing* Court revised the requirements for admitting breathalyzer test results into evidence by overturning its previous holding in *Pruitt v. State*, 393 S.W.2d 747 (Tenn. 1965). In *Pruitt*, the Court had determined that "the failure of the State to qualify a witness as an expert on the operation and results of an intoxication test

---

[2] This provision was subsequently repealed effective July 1, 2022. *See* 2022 Tenn. Pub. Acts, Ch. 655, § 18 (S.B. 2422).

with scientific devices was reversible error" and that in order for test results from a breathalyzer instrument to be admissible at trial, a certified operator of the instrument must know and be able to testify to the scientific technology involved in the functioning of the instrument. *See Sensing*, 843 S.W.2d at 413-16.

After determining that breathalyzer technology had advanced to a point that expert testimony at trial regarding the scientific technology behind breathalyzer instruments was no longer necessary to insure accurate results, *see Sensing*, 843 S.W.2d at 414-16, the *Sensing* Court promulgated six requirements that must be met before the results of a breathalyzer test may be admitted into evidence to prove an individual's blood alcohol level:

> We hold that the testing officer must be able to testify (1) that the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the [TBI], (2) that he was properly certified in accordance with those standards, (3) that the evidentiary breath testing instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed, (4) that the motorist[3] was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate, (5) evidence that he followed the prescribed operational procedure, (6) identify the printout record offered in evidence as the result of the test given to the person tested.

*Sensing*, 843 S.W.2d at 416.

In his appellate brief, Mr. Gordon contends that the Board improperly admitted his breathalyzer test results into evidence because the tests were not administered in accordance with the requirements set forth in *Sensing*. Specifically, Mr. Gordon avers that the first breathalyzer test, the Alco-Sensor V, was performed by Sergeant Keith Lawson, an officer not trained in its operation, in violation of the first two factors; that the EC/IR II instrument, from which his second breath sample was taken, had not been properly certified in violation of the third factor; that Mr. Gordon was not observed for twenty minutes prior to being tested on either machine in violation of the fourth factor; and that he had tobacco

---

[3] In *Sensing*, the defendant seeking to exclude the breathalyzer test results had been convicted of driving under the influence after a traffic stop. *Sensing*, 843 S.W.2d at 413. Hence, the Supreme Court used the word, "motorist," in the admissibility criteria promulgated therein. The Department has not raised an issue regarding this term. However, to clarify, we understand the word, "motorist," to operate in this instance as a term representing the individual from whom a breath sample is taken using a breathalyzer instrument. We do not interpret the term as intended to limit the class of people who are subject to breathalyzer tests to "motorists" only.

in his mouth when he breathed into the Alco-Sensor machine and within twenty minutes of breathing into the EC/IR II in violation of the fourth factor.

The Department does not dispute these facts, nor does it disagree with Mr. Gordon that the administration of the two breathalyzer tests used to collect his breath samples on January 17, 2020, did not comport with the requirements for admissibility set forth in *Sensing*. Instead, the Department argues that "*Sensing* is a criminal case and inapplicable to this context." The Department further contends that the breathalyzer test results were "admissible as relevant evidence pursuant to Tennessee Rule of Evidence 402 because they were used to demonstrate the Department's reasons for termination of [Mr. Gordon's] employment."

As to the Department's contention that *Sensing* does not apply to Mr. Gordon's appeal because *Sensing* is a criminal case, we respectfully disagree. It is true that *Sensing* involved an appeal arising from a criminal conviction for driving under the influence. *Sensing*, 843 S.W.2d at 413. However, the fact that the *Sensing* admissibility protocol arose in the criminal context does not, without more, preclude the application of the *Sensing* requirements to the civil context. The *Sensing* Court expressed nothing to indicate that the requirements for admissibility promulgated therein were limited to criminal cases. Rather, the *Sensing* Court broadly stated: "The fundamental question is the present foundation to be laid for the admission of evidentiary breath tester results." *Sensing*, 843 S.W.2d at 416. Nothing in this statement limits these admissibility requirements to criminal cases.

After setting forth the requirements for admitting breathalyzer test results, the *Sensing* Court concluded:

> Under the standards we have promulgated today the admissible evidence must show (1) that an evidentiary breath tester test was performed substantially in accordance with instructions approved by the forensic services division, with a type of device certified by the forensic service division, by a person trained and certified to conduct it and, (2) that the [breathalyzer] machine itself had been tested, inspected and certified in accordance with forensic division regulations to assure its accuracy before the results of an evidentiary breath tester test may be introduced.

*Id.* at 418. We find nothing in this conclusion or elsewhere in the opinion to indicate that the breathalyzer admissibility protocols should be abandoned simply because introduction of the results as evidence is sought in a civil case. Nor is there anything in our Supreme Court's subsequent discussions of or references to *Sensing* that limits its application to criminal cases. *See, e.g., State v. Cook*, 9 S.W.3d 98 (Tenn. 1999); *State v. Edison*, 9 S.W. 3d 75 (Tenn. 1999); *State v. Hunter*, 941 S.W.2d 56 (Tenn. 1997); *State v. Frasier*, 914

S.W.2d 467 (Tenn. 1996); *State v. Turner*, 913 S.W.2d 158 (Tenn. 1995); *State v. Bobo*, 909 S.W.2d 788 (Tenn. 1995).

Looking beyond *Sensing* and its progeny, the Department provides no authority, and we have found none, that limits the application of the *Sensing* requirements to criminal cases. It has long been held by both the United States Supreme Court and our Supreme Court that "[g]enerally, rules of evidence are the same in civil and criminal cases." *Nudd v. Burrows*, 91 U.S. 426, 438 (1875) (citation omitted); *see Nichols v. Mut. Life Ins. Co. of New York*, 156 S.W.2d 436, 439 (Tenn. 1941). Moreover, the scope of the Tennessee Rules of Evidence expressly covers admissibility of evidence in both civil and criminal cases. *See* Tenn. R. Evid. 101 ("These rules shall govern evidence rulings in <u>all trial courts of Tennessee</u> except as otherwise provided by statute or rules of the Supreme Court of Tennessee.") (emphasis added). Notably, the *Sensing* Court expressly determined that the certification requirement for breathalyzer machines conformed to the provisions of Tennessee Rule of Evidence 803(8) as an exception to the hearsay rule, an exception used in both criminal and civil cases. *Sensing*, 845 S.W.2d at 416. For these reasons, we determine that the protocol for determining admissibility of breathalyzer test results outlined in *Sensing* applies to both criminal and civil matters.

The Department asserts that the test results are admissible as relevant evidence pursuant to Tennessee Rule of Evidence 402, which provides that "[a]ll relevant evidence is admissible except as provided by the Constitution of the United States, the Constitution of Tennessee, these rules [of evidence], or other rules or laws of general application in the courts of Tennessee." Regarding a trial court's discretion to admit evidence pursuant to Tennessee Rules of Evidence 402, this Court has explained:

> Decisions regarding the admission or exclusion of evidence are entrusted to the trial court's discretion. *Dockery v. Bd. of Prof'l Responsibility*, 937 S.W.2d 863, 866 (Tenn. 1996). The trial court must exercise its discretion in light of [Tennessee Rule of Evidence] 402 which reflects the policy that all evidence meeting the test of relevancy in [Tennessee Rule of Evidence] 401 is admissible unless otherwise excluded on some appropriate ground. *Phillips v. F.W. Woolworth Co.*, 867 S.W.2d 316, 318 (Tenn. Ct. App. 1992).

*Levine v. March*, 266 S.W.3d 426, 439 (Tenn. Ct. App. 2007).

However, in cases where the evidence in question is the result of a breath-alcohol test, our Supreme Court has determined that *Sensing* removes the discretion of the trial court to determine admissibility:

> With specific regard to breath-alcohol test results, *Sensing* removed the discretion which would have ordinarily accompanied the admission of

scientific evidence. *See State v. Bobo,* 909 S.W.2d 788, 790 (Tenn. 1995) ("*Sensing* established the prerequisites for threshold admissibility of breath alcohol test results."). For example, as noted previously, the person administering the test need not be an expert. He or she must simply have been trained by the Tennessee Bureau of Investigation in the administration of such tests and must demonstrate that the test was performed according to that training.

> Thus, instead of having to determine whether the proffered test result "will substantially assist the trier of fact to understand the evidence or to determine a fact in issue,"[] the trial court must determine only whether the *Sensing* prerequisites have been met. In this sense, the prerequisites are essentially preliminary facts underlying the admission of the test result. Once they are proven by a preponderance of the evidence, *see State v. Stamper,* 863 S.W.2d 404, 406 (Tenn.1993), the trial court should admit the result.

*State v. Edison*, 9 S.W.3d 75, 77 (Tenn. 1999). Therefore, because we have determined that the *Sensing* requirements apply to the breathalyzer test results in the instant case, we further determine that the Board did not have discretion to admit the breathalyzer test results without first determining whether the *Sensing* protocols had been met in the procurement of Mr. Gordon's breath samples.

The Department relies on the United States Supreme Court's decision in *Williams v. Illinois*, 567 U.S. 50 (2012) for the proposition that Mr. Gordon's BAC levels were admissible because they were not taken from him during any investigation for wrongdoing. The Department asserts:

> As in *Williams*[, 567 U.S. at 58], the breathalyzer results were "sought *not* for the purpose of obtaining evidence to be used against petitioner, who was not even under suspicion at the time" (emphasis added)—the results were instead obtained during a training session conducted for law enforcement officers on *breathalyzer testing*.

However, we determine the facts in *Williams* to be highly distinguishable from those in the action at bar. *Williams* involved the admissibility of certain expert testimony related to matching DNA samples—testimony which the defendant challenged as violating the confrontation clause of the Sixth Amendment of the United States Constitution. *Williams*, 567 U.S. at 56-57. Concluding that the testimonial evidence was "not offered to prove the truth of the matter asserted[,]" the *Williams* Court held that introduction of the expert testimony did not violate the confrontation clause. *See id*. at 57-58. By contrast, the evidence in this case consisted of breathalyzer test results, not expert testimony, and did not involve a confrontation clause challenge. And unlike the testimonial evidence in

- 11 -

*Williams*, which was not considered for its truth, the numeric values of Mr. Gordon's breathalyzer test results were considered for their truth in that the results were used by the Board to estimate Mr. Gordon's BAC levels at the time he checked in to his post on January 17, 2020. That estimation was then used to determine that Mr. Gordon had arrived at work that day under the influence of alcohol. Finally, it matters not whether Mr. Gordon was under suspicion of wrongdoing when his breath samples were obtained. In either case, the *Sensing* requirements would need to be followed for the test results to be admissible. *Williams* is inapposite.

We reiterate that the Department has not disputed that the requirements outlined in *Sensing* were not followed. The record also demonstrates that the Board was apprised of this lack of compliance through testimony during the Board hearing. Agent Ferguson, the TBI special agent responsible for certifying the breathalyzer instruments for use in the field, admitted during his testimony before the Board that a number of the *Sensing* requirements had not been satisfied in collecting Mr. Gordon's breath samples. Regarding the requirement that the breathalyzer instrument be properly certified by the forensic services division, Agent Ferguson testified as follows during this exchange with Mr. Gordon's attorney:

| Attorney: | Now, let's talk about the test results a little bit. |
|---|---|
| Agent Ferguson: | Okay. |
| Attorney: | So with [Mr. Gordon's BAC level of] .033 which machine was that on? |
| Agent Ferguson: | That was on the EC/IR II instrument. It's going to be Serial number 13598. That is an instrument I use as a training instrument. I would just take it out to do training at any of the academies that I do classes on. |
| Attorney: | And was that machine working properly and had been calibrated and everything was fine? |
| Agent Ferguson: | It had not been calibrated since it's not an instrument to be used for evidentiary testing in the field. If it was, I would have certified it. But it actually did do a known ethanol standard. |

Regarding the requirement that the individual be observed for at least twenty minutes prior to blowing into the breathalyzer machine, the testimony continued:

| | |
|---|---|
| Attorney: | Well, the Alco-Sensor V does not have [the EC/IR II instrument's ability to] test for mouth alcohol? |
| Agent Ferguson: | No. But that's why you have the 20-minute observation, to eliminate the mouth alcohol. |
| Attorney: | We'll talk about that because that is the next requirement, isn't it? In *Sensing*. |
| Agent Ferguson: | Yes. Yes. The instrument certified by TBI. And then that number 4, that the operators observe the subject for 20 minutes. Yes. |
| Attorney: | Observe for 20 minutes. There was no observation of Erick Gordon for the purposes of administrating a breath test on either machine for 20 minutes prior to it being administered, was there? |
| Agent Ferguson: | No, there was not. Because, again, you're not expecting that result. You're expecting all to be "00." So not doing an observation, I was running the class and not watching him. Just doing the class and talking to them. That was it. |

Regarding the requirement that during the twenty minutes prior to providing a breath sample, the subject is not to have any "foreign matter" in his or her mouth, Agent Ferguson's testimony continued:

| | |
|---|---|
| Attorney: | The next [*Sensing*] requirement, besides the 20 minutes, is to make sure that during that period of time they do not have any foreign matter in their mouth? |
| Agent Ferguson: | Yes. That's correct. |
| Attorney: | Prohibition against foreign matter in a person's mouth is established by the manufacturer of the machine in both the Alco-Sensor and the [EC/IR II] in their manufacturer's literature in the case that the subject's mouth should be free of any foreign substance. |
| Agent Ferguson: | Right. It says no foreign materials present in their mouth when they're blowing on the instrument. |

| | |
|---|---|
| Attorney: | That's what the manufacturer says, right? |
| Agent Ferguson: | Yes. |
| Attorney: | That's what the State Supreme Court says, right? |
| Agent Ferguson: | Right.  It says [] foreign material must not be present. |
| Attorney: | And must not be present for at least 20 minutes prior to submitted the sample.  Right? |
| Agent Ferguson: | That is correct. |
| Attorney: | Okay.  We know in this case that there was foreign matter in the mouth of Erick Gordon? |
| Agent Ferguson: | Yes. He had dip in his mouth.  That's correct. |

Regarding the requirement that the breathalyzer test must be administered by an officer certified in using the machine, the following exchange ensued between Mr. Gordon and his attorney on direct examination before the Board:

| | |
|---|---|
| Attorney: | Were you told to use one of the machines first during the training? |
| Mr. Gordon: | Yes, sir.  We were instructed to use the portable [Alco-Sensor] breath machine. |
| Attorney: | I believe you said before that was the machine that you are not certified on? |
| Mr. Gordon: | Correct. |
| Attorney: | Were you partnered up with anybody? |
| Mr. Gordon: | I was partnered up with Sergeant Lawson. |
| Attorney: | Do you know whether or not he was certified to use that machine? |
| Mr. Gordon: | He was not. |

As demonstrated by these transcript excerpts, the EC/IR II instrument used to collect Mr. Gordon's second breath sample was not certified by the forensic services division of the TBI as mandated by the third *Sensing* requirement; Mr. Gordon was not observed for the "requisite 20 minutes" prior to either test as mandated by the fourth *Sensing* requirement; Mr. Gordon had tobacco dip, a "foreign matter," in his mouth during both tests as well as during the twenty-minute period prior to breathing into both breathalyzer instruments in violation of the fourth *Sensing* requirement; and the officer who administered the test on the Alco-Sensor machine that collected Mr. Gordon's breath sample was not certified to use that machine, as required by the second *Sensing* requirement.

In sum, we conclude that the Board erred by not considering whether the *Sensing* requirements had been met before admitting Mr. Gordon's breathalyzer test results into evidence. *See Edison*, 9 S.W.3d at 77. The undisputed facts demonstrate that several of those requirements had indeed not been satisfied, resulting in the admission of evidence prejudicial to Mr. Gordon based on incorrect procedure. Therefore, the trial court was correct to reverse and modify the Board's decision on those grounds. *See* Tenn. Code Ann. § 4-5-322(h); *Pressley*, 528 S.W.3d at 512 (a reviewing court may reverse the Board's decision when "one or more of the five enumerated grounds for reversal are present.") (citing Tenn. Code Ann. § 4-5-322(h); *Davis*, 278 S.W. 3d at 264).

Furthermore, we find no error in the trial court's determination that once the breathalyzer test results were excluded, there would be "no substantial or material evidence that Mr. Gordon was 'under the influence' on the morning of January 17, 2020[.]" The Board rendered its Final Order using the following definition of "Under the Influence" from the Department's "General Order 221[,] III:F":

III.    DEFINITIONS:

F.    Under the Influence:

For the purpose of this policy, under the influence means that the employee is affected by a drug or alcohol or the combination of a drug and alcohol in any detectable manner. The symptoms of influence are not confined to those consistent with misbehavior, nor to obvious impairment of physical or mental ability, such as slurred speech or difficulty in maintaining balance.

(Emphasis added.)

Here, nothing in the record indicates that Mr. Gordon showed signs that he was affected by alcohol in any detectable manner on the morning of January 17, 2020. Everyone who interacted with Mr. Gordon at his job post that morning and who testified

before the Board stated that they saw no signs that Mr. Gordon had consumed alcohol the night before. Before Mr. Gordon submitted to the breathalyzer test as part of the training that morning, not one of the witnesses expressed suspicion that he was under the influence of alcohol, a fact which the Department does not dispute. Instead, witnesses testified that Mr. Gordon had arrived late to work and that, upon arrival, he had asked for a "Goody's Powder" for a headache after explaining that he had signs of a "hangover." These facts, without more, do not support a finding that Mr. Gordon was "under the influence" as defined by Department policy and as considered by the Board in upholding his termination. For these reasons, we determine that the trial court was correct to reverse and modify the Board's decision.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's August 10, 2022 order reversing and modifying the October 9, 2020 Final Order of the Tennessee Board of Appeals. We remand this matter to the trial court for removal of the stay pending appeal, enforcement of the trial court's judgment, and collection of costs assessed below. Costs on appeal are assessed to the appellant, the Tennessee Department of Safety and Homeland Security.


s/Thomas R. Frierson, II

_____

THOMAS R. FRIERSON, II, JUDGE